
SCHIEFFELIN *against* STEWART AND OTHERS.

An executor, administrator, or trustee, is not allowed to make any gain, profit, or advantage, from the use of the trust funds.]

If he negligently suffer the trust moneys to lie idle, he is chargeable with simple interest.

If he convert the trust moneys to his own use, or employ them in his business or trade, he is chargeable with *compound interest.*

Where an administrator employed the moneys belonging to the intestate's estate, in trade, for his own benefit, of the profits of which he refused to give any account, the master, in stating an account, after allowing a reasonable time for the settlement of the estate, charged *compound interest,* making annual rests in the accounts, for that purpose, which was confirmed by the court.

*JOSEPH HOPKINS,* of the city of *New-York,* died, in *July,* 1803, intestate, leaving a widow and several infant children. The plaintiff and *Elijah Ferris,* with the widow, were appointed administrators of the estate; and the plaintiff was appointed guardian to the children, who are still under age. The principal burden of the administration devolved on the plaintiff, and the goods and effects of the intestate, to a large amount, came into his hands. He had paid out large sums in discharge of the debts of the intestate, and for the maintenance of the children; and for his agency in the administration he claimed to be allowed a *commission* out of the estate. Considerable sums belonging to the estate still remained in the hands of the plaintiff, and he was desirous *to adjust and close the accounts, and, after deducting his reasonable charge and commissions, to pay over the residue to the children, or to their guardians.* The bill stated that the plaintiff could not come to an adjustment and settlement to his accounts, without the aid of this court; and he, therefore, prayed, that an account might be decreed to be taken under the direction of the court, that he might be allowed a reasona-

ble compensation for his great care and trouble in relation to the estate, and the proportions of the children, &c. and for such other relief, &c.

The defendants, by their answer, submitted to an account, &c. but resisted the plaintiff's claim for commissions, and prayed that the plaintiff might be decreed to pay over the moneys belonging to the estate, in his hands, with interest, &c.

The cause being at issue, several witnesses were examined, and an order of reference was made to a master, to take and state an account, &c. The master's *report* contained an account of all the moneys collected and paid by the plaintiff, as administrator, from the 8th of *September*, 1803, when the administration was granted, to the time of taking the account of both the real and personal estate of the intestate. It stated the balance in the hands of the administrator, from year to year, and of the interest thereon, and the total amount due, at the date of the report, (6th of *February*, 1815,) from the plaintiff to the representatives of the intestate, for principal and interest, being 59,658 dollars and 68 cents. The master, also, stated, that he allowed the plaintiff, from the 8th of *September*, 1803, to the 6th of *July*, 1805, for the settlement of the estate ; the last debt of any magnitude, due from the intestate, being paid by the plaintiff on the day last mentioned ; that, from that day until the time of the report, very large balances, and at no time less than 33,000 dollars, constantly remained in the hands of the plaintiff, without producing any benefit or advantage to the estate. That all the sums paid after the 16th of *July*, 1805, were moneys advanced by the plaintiff, with one or two trifling exceptions, to the different heirs and their guardians; that he, the master, therefore, made annual *rests*, commencing the year from the last-mentioned day. That, from the vouchers submitted, on taking the account, and from the examination of the plaintiff, it appeared, that on the 16th of *July*, 1805, and before that period, the plaintiff kept his account, as administrator,

1815.

SCHIEFFELIN
v.
STEWART.

with the bank of *New-York,* and continued it there, until the 6th of *March,* 1806, when he transferred the same to the *Manhattan Bank,* where it was continued to be kept until *May,* 1807. That a small part only of the funds belonging to the estate, and in the hands of the plaintiff, were, at any time during the above periods, deposited in either of those banks. That, from *May,* 1807, to the time of accounting before him, (the master,) the plaintiff had not kept any account, as administrator, with any bank ; nor had he kept the moneys belonging to the estate, which, from time to time, came into his hands, separate and distinct from his own moneys ; but, on the contrary, had blended the same with his own private property, and had used and employed the money belonging to the estate in his business or trade, and had loaned large sums thereof to other persons ; and all this without accounting to the estate, either by way of interest or otherwise. That in making the yearly rests, he, the master, charged the plaintiff with *compound interest,* commencing from the 16th of *July,* 1805, on the balance then remaining in hand ; *i. e.* one year's interest was calculated on such balance and added to the balance of principal due on the 16th of *July,* 1806, and both made principal, upon which aggregate sum interest was again calculated for another year, to the 16th of *July,* 1807, and added to the balance of principal due on that alone, and so on, for each year, during the whole term.

The following *exceptions* were taken to the *report* of the master : 1. That the master has charged the plaintiff with *compound interest,* upon balances remaining in his hands subsequent to the 16th of *July,* 1805.

2. That he has charged him with any interest at all.

3. That he has refused to allow the plaintiff any commissions, or compensation, for his care and trouble.

4. That he allowed the plaintiff time for settlement of the estate, only from the 8th of *September,* 1803, to the 16th of *July,* 1805.

5. That he has certified that the plaintiff used and employed the money belonging to his intestate's estate in his business or trade, whereas the pleadings and evidence in the cause do not warrant such a conclusion.

*Van Vechten* and *H. Bleecker* argued, for the plaintiff, in support of the exceptions. They cited 1 *Vesey*, jun. 99. 2 *Atk.* 410. 534. 604. *Prec. in Ch.* 254. 1 *Bro.* 375. 384. 3 *Bro.* 74.

*Henry*, contra, cited 4 *Vesey*, 620. 7 *Vesey*, 129. 11 *Vesey*, 59. 99. 12 *Vesey*, 388.

THE CHANCELLOR. As the plaintiff took no exception to the testimony taken before the master, and has not shown, by affidavit, what that testimony was, nor called upon the master to report the facts, I have a right to presume, that the master had sufficient evidence before him to warrant the conclusion, that the plaintiff had used and employed the money belonging to the estate in his business or trade. The master says, that the fact of the appropriation of the assets by the plaintiff to his own use, appeared from the vouchers submitted in taking the account, and from the examination of the plaintiff. How can I say, then, that this allegation is not correct and true? I am bound, as the case is now before me, to consider every fact stated in the report to have been duly established by competent proof; and the only real question in the case is, whether the charge of compound interest be proper.

It has been settled, by repeated decisions, that executors and administrators are not entitled to any commission for executing their trust; and it is equally well established, that they must, at all events, pay interest upon moneys of the estate converted to their use. These two points I was led to examine, with much care, in the cases of *Dunscomb* v.

1815.    *Dunscomb,*[*] and of *Manning* v. *Manning*,[†] and to which
it will now be sufficient for me to refer. The only point
SCHIEFFELIN    worth considering, is the compound interest which the mas-
v.    ter has allowed.
STEWART.

*Ante*, p. 508.    No just complaint can be made of the time from which
†*Ante*, p. 527. the computation of interest began. The plaintiff was allow-
ed nearly two years to settle the estate, without being
chargeable with interest. For a considerable part of that
time he had a large balance in hand, and the time was amply
sufficient, in this case, to close the concerns of the adminis-
tration, and the debts were all paid within that time, with
one or two trifling exceptions. It was the duty of the plain-
tiff, from that time forward, to have made distribution of the
assets, or placed them in a situation to become productive,
and to accumulate for the heirs. He did neither, but em-
ployed the money in his own business, or trade, or in making
large loans for his own benefit; and as he has not disclosed
(as he might have done to the master) what were the profits
of the assets so employed, it appears to me, as well on prin-
ciple as on authority, that he is justly chargeable with the
interest contained in the report. The only way for the
plaintiff to avoid this conclusion, was by fairly disclosing
what he had made by the use of the money.

The courts were, anciently, quite lax on the subject of
these personal trusts, and allowed executors to convert the
moneys of the testator to their own use, without any account
for interest. This must have been the source of great
abuse, and was unjust towards the *cestuy que trust*. With
such a pecuniary privilege, the office of trustee, as Lord
*Loughborough* expressed himself, would be canvassed for.
This blemish in the *English* jurisprudence was corrected
as early as the case of *Ratcliffe* v. *Graves*, (1 *Vern*. 196.
2 *Ch. Cas*. 152.,) in which the Lord Keeper held, and, as it
is said, against many precedents, that the administrator must
pay interest for the moneys of the estate employed in his
own business; and he laid down this principle, which runs

through all the subsequent cases, that *an executor ought not to turn the money to his own private advantage.* The rate of interest is not stated; and, from different reports of that case, it is uncertain whether the money was employed by the administrator in trade or in loans. The recognition of the principle was, however, a great improvement; but the modern cases have felt the necessity of explaining and defining the duties and responsibility of the trustee with more precision, in order to give greater efficacy to the just and salutary doctrine, that a trustee shall never be permitted to make gain to himself of the trust property.

In *Newton* v. *Bennet,* (1 *Bro.* 359.,) the executor mixed the testator's money with his own, and applied it in the course of his trade; and the master, in taking the account, made rests every year, and reported a large balance against the defendant; and the question was, whether he should pay interest *for the sums, from time to time, in his hands,* and it was decreed that he should. In this case I should conclude, that compound interest was allowed, though the making of periodical rests, in taking an account, seems not, of itself, necessary to imply it. Accounts have frequently been directed to be taken with annual rests; (2 *Atk.* 410. 534. 6 *Bro. P. C.* 319. old edit.;) perhaps, to see whether interest ought to be charged, or to relieve the defendant in the application of his payments; and in one instance they were expressly directed to be made without prejudice to the question of interest. (16 *Vesey,* 97.) Whatever might have been the fact, in the case above cited, it is certain that the allowance of compound interest is often essential to carry into complete effect the principle of the court, that no profit, gain, or advantage, shall be derived to the trustee from his use of the trust funds. All the gain must go to the *cestuy que trust.* This is the true equity doctrine. It secures fidelity, and removes temptation; and it is the ground of this allowance of annual rests, in the taking of the account, where the executor has used the property, and does not dis-

1815.

SCHIEFFELIN
v.
STEWART.

close the proceeds. The principle was more clearly enforced in *Treves* v. *Townshend*, (1 *Bro.* 384.,) which was the case of the assignee of a bankrupt who suffered the money of the estate to lie idle for years with his private banker. The Chancellor considered money so placed as answering the purpose of credit and trade, and though 4 per cent. was the usual interest of the court, in a case of mere neglect to pay, yet it was presumed that the money was worth 5 per cent. to the assignee, and he was held to account for all the gain; and 5 per cent. interest was, accordingly, decreed, with costs. The same rule appears in a variety of other cases, (1 *Vesey*, jun. 89. 4. *Vesey*, 620. 11 *Vesey*, 58.,) in which the increase of interest to 5 per cent. was given to meet a presumed gain. In *Pocock* v. *Reddington*, (5 *Vesey*, 794.,) an executor having been guilty of a breach of trust by selling out stock, and dealing improperly with the trust money, the *cestuy que trust* was allowed the option to have the stock replaced, or the proceeds of the sales, with interest at 5 per cent., *or more, if more had been made by it.* The observations of Lord *Alvanley*, in that case, are strong and impressive. The defendant " had very imprudently, and, he must say, very improperly, taken upon himself to lend the money of his ward to his own friends, and upon personal security, and for that purpose he sold out stock," &c. " That was a transaction that it was impossible to permit to pass without animadversion. He had no right to put it in that hazard. No man is justified in putting the property, of which he is trustee, in jeopardy. Therefore, he must answer for the money with what he may be supposed reasonably to have made; and if he made more, he must answer for that too."

But there are cases which not only contain the general principle, that a trustee using the trust money must account for all the profit of it, but, in order to reach that profit when it is not otherwise ascertained, they adopt the very rule of computation contained in the report before us.

In *Foster* v. *Foster*, (2 *Bro.* 616.,) the defendant was executor of a receiver, and the money was derived from the rents and profits of land ; and the master was directed to compute interest, at 4 per cent., *on the balance he should each year find* in the hands of the receiver, and, also, of the executor. In *Raphael* v. *Boehm*, (11 *Vesey*, 92.,) the direction was to take an account against the executor, who was a trader, and to compute interest, at 5 per cent., on moneys in his hands from the time he received it, and in such computation to make half yearly rests for the very purpose of allowing compound interest. This was carrying the rule far beyond the present report, and the case led to a full and able discussion of the whole principle ; and the general rule was sanctioned by Lord *Eldon*, under the influence of all that caution and anxious inquiry for which he is distinguished. It was declared, in that case, to be the general understanding of the masters, that where rests were directed to be made in taking an account, they were to be made with the view of computing compound interest ; and it was admitted by the counsel, who opposed the allowance, that if a trustee had made, or if there were ground to infer that he had made, compound interest, or more, he must account accordingly. The Chancellor observed, that the charge of compound interest, in that case, was consistent with every view of moral justice ; and that the court would shamefully desert its duty to infants, by adopting a rule that an executor might keep money in his hands without being answerable *as if he had accumulated.* The same rule was, afterwards, adopted by Sir *Wm. Grant*, in *Dornford* v. *Dornford*, (12 *Ves.* 127.)

It would be easy here to show, as was done in that case, the injustice to the infants in denying compound interest, and the direct gain that would be permitted to the plaintiff. Thus, in *July*, 1805, he had in hand 33,000 dollars of moneys belonging to the estate, and no debts to pay. In *July*, 1806, he received, (as we must presume,) for the use of that fund, in his trade and by his loans, at least, the simple

1815.

SCHIEFFELIN
v.
STEWART.

1815.

SCHIEFFELIN
v.
STEWART.

* *Ante,* p. 13.

interest, or 2,310 dollars. That sum he will, then, retain in his business for nine years, or to the taking of the account, free of interest. The next year, or *July,* 1807, he receives another year's interest, and will then have in hand, of interest, 4,620 dollars, to be used for his own advantage, for eight years, free of interest. The third year he will have in hand near 7,000 dollars, to be retained for seven years, without interest, and so on down to the date of the report. The fund, instead of accumulating for the benefit of the infants, accumulates for his benefit. In this way, as Lord *Eldon* observed, the property would be nearly as beneficial to the executor as to the infant, and this would overthrow the principles of the court. Such a consequence cannot be endured. A man in trade could afford a large premium for letters of administration upon a rich estate, especially if the infant heirs were very young. What temptation would thus be held out to delay and negligence in rendering an account! What inducements to trustees to employ the trust moneys in their own private speculations and trade, to the hazard of the loss of the whole fund !

In the ordinary case, between debtor and creditor, compound interest is not recoverable. This point I had occasion to examine fully in the case of *The State of Connecticut* v. *Jackson.** But here a charge of such interest becomes indispensable to enable us to reach the gain or profit which the plaintiff ought to refund.

It cannot be amiss to observe, at the conclusion of this opinion that the civil law was not forgetful of the justice and necessity of such a strict provision against trustees who converted the trust moneys to their own use. While it gave ordinary interest against the tutor, who suffered the pupil's money to lie idle; yet, if he converted it to his own purposes, he was held responsible for interest *non ex more regionis,* (as 5, or 4, or 3 *per cent.,*) *sed gravissimas vel maximas usuras,* which different commentators fix at 12, or 8, or 6 per cent., while 4 per cent. was the ordinary interest. (*Dig.*

3. 5. 38 *Ibid.* 26. 7. 7. 6. and 10. *Code,* 5. 56., with the notes of *Gothofredus,* and *Voet's Comm. ad. Pand.* lib. 26. tit. 7. s. 9.) Such concidence, on this particular point, between two such systems of jurisprudence, serves, of itself, to show that the principle adopted has a clear foundation in natural justice, or, at least, is recommended by the obvious dictates of public policy. Indeed, it appears to me to be an interesting fact, that the refusal of compound interest, in ordinary cases, between debtor and creditor; the denial of compensation to executors and other trustees; the charge of simple interest against them when they negligently suffer the trust moneys to lie idle; and the charge of extraordinary interest against them when they convert it to their own use, are distinct principles, not only well-settled in the *English* law, as I have abundantly shown in this, and in the other cases referred to, but they all existed as known principles in the civil law of *Rome.* And those principles, from the prevalence of that code, are now, probably, acknowledged and settled, as part of their common law, in most of the continental nations of *Europe.*

This historical fact is calculated to inspire us with much respect for these principles, independent of their practical utility in securing the diligence and fidelity of trustees.

The exceptions to the report must, accordingly, be overruled.

Exceptions overruled.