The opinion of the Court was delivered by
O’Neáll, J.
In this case, the following facts are stated in the bill, and conceded to be true: Tabitha Morrow was indebted to Robert Clendenin, Esq., as the guardian of her son, John Morrow, in a considerable sum. ' For it she and her security confessed judgment. She whs then the owner of five slaves— Richard, Sally, Eliza, Jim and Edward. Subsequently, Mr. Clendenin’s letters- of guardianship were revoked, and the guardianship committed to James R. Morrow, another son of the said Tabitha. Being unable to pay her debts, she conveyed her slaves to the said James R., upon the condition that he should pay and satisfy her debts. He received from Mr. *173 Clendenin the judgment against Tabitha Morrow and her security, Thomas .Williams, Jr., as a part of his ward’s-estate, and entered satisfaction upon it. Tabitha Morrow died insolvent, and no administration has been taken out on her estate. James R. Morrow is also insolvent, and has not paid any money on account of his mother’s debts. The complainant is one of the securities of the said James R., for his guardianship of John. Morrow. The guardianship of the person and estate of John Morrow, committed to James R. Morrow, has been revoked, and granted to the complainant, by whom this bill is filed to restrain •the creditors of James R. Morrow from selling the slaves which he received from his mother, and to make them specifically liable to the payment of the debt of Tabitha Morrow to the complainant’s ward.
Had it not been that the learned Chancellor who tried this cause dismissed the bill, I should have thought it only neces-' sary to state the case, to show that the complainant was entitled to the relief which he seeks. In the spirit of that respect to his judgment, to which I always think it entitled, I have reviewed my first impressions in relation .to the case, with the hope that I.might discover some ground on which we might affirm the. Chancellor’s decree; but, after a thorough examination of the case, I am compelled to differ from the Chancellor. As he has not assigned any reasons for his judgment, except “ that the case stated in the bill did not entitle the complainant to the relief prayed,” it will only be necessary that I should point out the views of the case which, in our judgment, do entitle him to relief.
It is perfectly clear, that the effect of the deed from Tabitha to James R. Morrow, was to create a trust in him for the. payment of her debts, out of the property conveyed to him.- ’ He was, in the discharge of this trust, bound ’ so to apply the property, and it was specifically liable, in his hands, for the payment of the debts. Until he paid the debts, he .had no title to the slaves, unless it might have been, that he would have been entitled, as a donee, to the residue, which might have remained *174 after the debts had been satisfied by a sale of a part of them. When James It. Morrow became the guardian of the complainant’s ward, and received the judgment as a’part of his estate,, and entered satisfaction upon it, it was an acknowledgment that he had received the amount, and was legally to be regarded as a payment to him of it. In what he received it, whether in money or property,'is a question which his ward might investigate or not, as he chose. He might have elected .to consider it as money, and have charged his guardian accordingly. But, if it was more advantageous to- the ward to follow the specific property received, it is, I think, demonstrable, that he had a right so to do. The most eminent Chancery judge of modern times, Chancellor Kent, in Green vs. Winter, 1 Johns., Ch. 36, says, “ A trustee cannot act for his own benefit, in a contract on the subject of the trust.” In Parkist vs. Alexander, 1 Johns., Ch. 397, he says, “ An agent or trustee, .undertaking a special business for another, cannot, on the subject of that trust, act for his own benefit, to the injury of his principal.” In Schieflin. vs. Stewart, 1 Johns. Ch. 625, speaking of the funds of an estate, he says, “ an executor ought not to turn the money to his own private advantage.^ These rules are the same in substance, and from them I would state, as a necessary corollary, that it is a clear principle of Equity, that a trustee cannot ■ make any advantage to himself, by the application of the trust fund to his private purposes. The defendant, James R. Morrow, stood to the complainant’s ward in a twofold character, as trustee. He was trustee, under the deed of Tabitha Morrow, for the payment of her debt to him; and, as his guardian, it Was his duty to manage the estate of the ward to his advantage, and not to make of it any gain to himself, or loss to his cestui que trust. Take the first relation in which he stood, that of trustee .under the deed, and let us examine whether, by entering satisfaction, he discharged and ended that trust. In Equity, it is clear that he did not — for if he did, the result would be that, by the use of a legal authority, conferred upon him to protect his ward’s estate, he would divest him of a specific lien on *175 property held in trust, for the payment of the debt due to him, without -any equivalent indemnity for it. But the effect of entering satisfaction on the judgment was nothing more than the destruction of that security, and a transfer of the amount of it, as a direct charge upon the property, in the hands of the trustee. He could only discharge this charge by paying to his ward, on his attaining to full age, or to the guardian who succeeded him, the debt and interest.
It may be stated, as a- general rule, that so long as property held in trust, or a trust fund, can be traced and distinguished, it will enure to the benefit of the cestui que trust; Moses vs. Murgatroyd, 1 Johns. Ch. 128; Dexter vs. Stewart, 7 Johns. Ch. 55. Apply this rule to this case in two aspects, and the complainant' is entitled to a decree. Regard James R. Morrow as a trustee, under his mother’s deed, for the payment of her debt to her son, the complainant’s ward, and ask, has it been, paid ? The answer must be no. But it has been released by the trustee, as his guardian! This is no performance of the trust, and of course the property held under the trust must be still liable, if it can be traced. It is in the possession of the defendant, and the claims of his creditors must be postpone'd until the trust is ’ discharged. • In the case of Dexter vs. Stewart, the contest was between the assignees of a bankrupt and the cestui que trust, and in that case Chancellor Kent states the rule to be, “ though a chose in action be taken in the name of, the agent, it does not pass by his bankruptcy to his assignees, provided it be taken and held in trust.” In the same case, he remarks, “ the assignees of a bankrupt, in such cases, stand exactly in the situation of their principal, and with no greater rights.” If this be true as to assignees, it must also be true as to creditors. If James R. Morrow was alone interested in the question before the Court, it could never be questioned that the property conveyed by his mother to him, Avould be liable to the payment of the debt to complainant’s ward, notwithstanding the entry of satisfaction on the judgment. His creditors have no greater *176 lights than he had, and the decree must be the same against them as it would be against him.
But lay 'out of view, the trust created by'the deed, and let it be assumed, as probably the fact really -was, that the deed was executed to him to procure the entry of satisfaction to be made by him as guardian. So long as the fund or property, received for the cestui que trust, can be traced, it must inure to his benefit. Here the property was received by his- guardian, in payment of the debt due to his ward, and Although he, no doubt, did not intend the property to be his ward’s, yet he cannot, by the use of' his ward’s funds, make any advantage to himself and as-the very thing received in payment is now within the power of the Court, it must be followed, as belonging to the ward. If the defendant, James R. Morrow, acquired a. title to the slaves by the entry of satisfaction on his ward’s judgment, it was, in effect, purchasing them with the funds of his ward, and a trust results for his cestui que trust. The whole valuable consideration, paid, for them, was trust fund, and f am unable to see the difference between the' case, as it stands, and as it would have been, if he had received the amount of the judgment in money for his ward, from Mr. Clenderiin, the former guardian, paid it to his mother for the slaves, and she had paid the money back to Mr. Clendénin,, iri satisfaction of the judg: ment. A clear resulting trust would be the consequence, if the facts had been so; and although the cáse, as it is, is notin terms identical with the one with which I have compared it, yet in effect it is the same, and the same consequence musf result from it. Boyd vs. McLean, 1 Johns. Ch. 582; Botsford vs. Burr, 2 Johns. Ch. 405; Steere vs. Steere, 5 Johns. Ch. 1. But it is said,'the complainant is surety for James R. Morrow’s guardianship, and is liable to his ward, in that character, for ■the amount of the debt'of Tabitha Morrow, which his principal admitted-he had received, by the- entry of'-satisfaction on the judgment, and that, therefore, he ought not to recover in this case. It is true, that he might be made liable in his character *177 of security ; but his ward, has a right to elect, whether he will charge the amount of his mother’s debt as so much money received to his use by his former guardian, or follow the property received, as may be most advantageous to him. The complainant, as his guardian, has now the right to make that, election for him, and having done so, it is not for us to question ' its propriety. It may be, if he has made an injudicious election, thát his ward may, on attaining to maturity, disaffirm it, and hold him responsible for the amount of -the debt, as money received by his principal. If he should do so, or if it was now done,- it would not alter the complainant’s claim to a recovery. For, as security, upon paying the debt of his principal, (which I, for the purposes of this question, now regard as done, by his appointment as guardian, and consequent right to receive it,) he has the right to be subrogated to all the creditor’s securities and rights against the principal. In this view, he would have the right to set up, for his indemnity and protection, all the liens or claims which his ward had, under the deed of his mother, or from the receipt' of the property in satisfaction of a debt belonging to him.
If the complainant had sought a recovery of the whole of the slaves as a resulting trust, from the purchase being made with his ward’s funds, he might have succeeded even to this extent, upon showing'that Mrs. Morrow owed no other debt. But as he has not made this claim, and has only sought, to make the property liable to the payment of the debt due by Mrs. Morrow to his ward, and as it has not appeared that Mrs. Morrow did not owe other debts, the slaves will only be declared liable to the payment of that debt. It was said in the argu-menté and not denied, that the complainant has had, for some time, the slaves in his possession. If this be so, and their services have been of any value, over and above their maintenance, he must account for their hire.
It is, therefore, ordered and decreed, that Chancellor Johnston’s decree be reversed; that it be referred to the Commissioner, to ascertain the amount of the judgment of Robert Clendenin, *178 Guardian vs. Tabitha Morrow and Thomas Williams, Jr., at the time the satisfaction was entered thereon by James R. Morrow, with the interest on the aggregate then due from that time to the time at which the Commissioner shall make up his report; that he do also ascertain and report the value of the hire of the said slaves, since they have been in the complaim ant’s possession, which he will deduct from the aggregate of the. principal and interest of the sum reported on account of the said judgment; and, for the balance due, the said slaves are declared to be liable. And it is further ordered- and decreed, that the Commissioner do advertise and sell the said slaves, on a credit of twelve months, taking the usual securities for the payment of the purchase money; and that he do apply the proceeds of the said sale, first, to the payment of the costs of this case; second, to the payment of the balance which may be reported in favor of the complainant, on account of the said judgment; and third, any surplus which may remain, as may be hereafter directed by the Court of Equity for York District,
Johnson and Maetin, JJ., concurred.

Decree reversed.