Allen, J.
This court, by its former decree, merely decided that these executors, under the will of their testator, were, in respect to the land fund and hires of slaves, to be treated as guardians, and their accounts to be settled on the principles of guardians’ accounts. The question still remains to be determined, how a guardian’s account is to be settled, where, as in this case, he has wholly neglected to return his annual settlements to the court to which he is amenable, according to law. This court, in Myers &c. v. Wade &c. 6 Rand. 444. determined, that in a suit by the wards against a guardian for an account, the latter, having neglected to return annual settlements, and failed to procure the permission of the court to appropriate any part of the principal of the wards’ estate to their maintainance, should not be allowed for disbursements beyond the annual interest or income. And in the case of Wormley's adm'r v. Boswell, decided at the last term and not yet reported, the court held, in a suit by the guardian against the representative of the ward, to recover disbursements beyond the receipts, that it was not competent for the chancery court to allow for such disbursements beyond the income, the guardian having neglected for many years to settle with the proper court and procure an order allowing such disbursements. The effect of these two decisions is, to secure the principal of the estate against misapplication by the guardian. In the latter case, I bad occasion to review the various provisions of the law respecting guardians, for the purpose of shewing the anxiety of the legislature to guard against abuse, *210 by enforcing annual settlements, and securing the conJ ... Q . . . . , trolling supervision ot the proper court over the conduct of the guardian, whilst the transactions are recent. These cases having established principles which proth*3 principal of the estate against misapplication, it becomes necessary to decide in the present case, what “principle shall govern in respect to balances of revenue which may remain after deducting the disbursements. This will depend in a great measure upon the terms of the act of assembly.
The 7th section of the law respecting guardians requires the guardian appointed by a court, at the first or second session after his qualification, to deliver into such court an inventory, upon oath, of all the estate he shall have received ; and, within two successive courts after the receipt of any other estate of the ward, an inventory of such other estate, to be entered of record in a separate book. This provision looks to the principal of the estate, and furnishes record evidence by which to charge the guardian for the amount thereof. The law then provides that he shall annually, and at the September term, if it be a county court from which he has received his appointment, exhibit accounts of the produce of the estate, of the sales and disposition of such produce, and of the disbursements. The 8th section provides for the mode of enforcing such annual settlements ; and the 9th, amongst other things, directs that the balance, after deducting disbursements, “may be put out to interest for the benefit of the ward, upon such security as the court shall direct and approve ; or the guardian, if it remain in his hands, shall account for the interest, to be computed from the time his account was or ought to have been passed.”
If the guardian complies with the requisitions of the law, all difficulty as to the mode of settling is avoided. His inventory shews the estate received; his annual account, the income; and he is entitled to the aid and *211 instruction of the court as to the disposition of the sur- , . . . plus. 1 his surplus ot any one year, not being required for disbursements, becomes a part of the principal, and, . , , . , , .. as such, cannot be expended by the guardian to meet disbursements of succeeding years, except by the mission of the court. As a general rule, the court, looking to the benefit of the ward’s estate, would direct the surplus to be either invested in stock producing an annual return, or loaned out to punctual borrowers who would pay the interest. If under any circumstances a secure investment at simple interest should be deemed advisable, the guardian, acting under the advice of the court, would be justified in making it. The money being so invested, the guardian would be held to account annually for only so much of the interest as he received. But where the guardian is guilty of neglect; where he fails to make his settlements, and keeps the money of the ward in his own hands, using it for his own purposes, how is the account to be stated ? The wmrds of the law require annual settlements; its policy looked to the constant superintendence and control of the proper court; and no principle should be adopted, which, in the case of such failure to settle, would place the guardian in a more favourable position, or hold out inducements to him to neglect his duty. For this would be enabling him to profit by his own wrong. An account should therefore be raised against him annually, and the disbursements applied to the annual receipts. This is necessary to satisfy the requisitions of the law, which requires interest to be computed from the time the account ought to have been settled. But as to the mode of computing interest upon the balances thus ascertained, I was at first under the impression that the provisions of the statute would be satisfied by adopting the mode prevailing between ordinary debtor and creditor, and permitting the debt to stand as an investment at simple interest, until it was brought into the general *212 aggregate at the dose of the account. For as the court, 1 presume, 'could, in thé exercise of a proper discretion, and under peculiar circumstances, authorize such an investment, it seemed to me that the same indulgence might properly be extended to the guardian ; and that in consequence of his failing to settle, he was to be treated as a borrower of the surplus, and should be permitted to hold it on as favourable terms as the court might have directed. The cases in this court, too, seemed to lean against the principle of compounding interest. Thus in Childers v. Deane &c. 4 Rand. 406. judge Carr, after reviewing the cases, states that the general rule, as settled by the later cases, is, that it shall not be allowed. And in the case of Carter's ex'ors v. Cutting & wife, 5 Munf. 223. the court decided, that moneys directed to be invested by executors in government securities, should be accounted for as if invested, after a reasonable time for that purpose; but that the executors ought, not to be charged with interest upon the dividends of stock, if such dividends had not actually been received. The last was the case of executors ; as to whom this court has established principles of great liberality. The peril which their office imposes on them ; the necessity of disposing of the estate on a credit; the risk of loss from this source ; the hazard of being subjected to a devastavit, by paying the assets to creditors of inferior dignity; their ignorance of the condition of the testator’s estate; the exposure to loss from agents, counsel &c.—all these considerations have induced the courts in this country to relax the more rigorous rule adopted in England with respect to this class of fiduciaries. But -in reality, few of the considerations applicable to executors apply to the guardian. His duty is simple. He is to receive the estate, collect the rents, hires &c. and dispose of the produce. He is not required to keep funds in hand to meet possible claims. His disbursements are generally confined *213 to the support and education of the ward, and the pre- • ¿ n m * . servation of the property. Ihe general principle is, that a trustee using the trust money must account for all the profit of it. But where that profit is not ascertained, some mode of computation must be adopted by which to arrive at it. In Raphael v. Boehm, 11 Ves. 82. the direction was, to take an account against the executor (who was a trustee) with a computation of interest on all sums received by him, while in his hands; and that the master do, in such computation, make half yearly rests. The object of the direction was to charge compound interest. Lord Eldon remarks in that case, that “ where there is an express trust to make improvement of the money, if he will not honestly endeavour to improve it, there is nothing wrong in considering him to have lent the money to himself, upon the same terms upon which ho could have lent it to others, and as often as he ought to have lent it, if it be principal, and as often as he ought to have received it and lent it to others, if the demand be interest, and interest upon interest.” And in another place, that “ the court would shamefully desert its duty to infants, by adopting a rule that an executor might keep money in his hands without being answerable as if he had accumulated.” These remarks apply with great force to the case under consideration; where the estate was considerable, the wards young, and accumulation for their benefit is the governing intention of the will. But they apply with almost the same force to the case of every guardian who acts under our law, which has guarded the interests of wards with so much jealous caution. This case was reheard before lord Erskine, 13 Ves. 407. and he fully concurred with lord Eldon. The subject was very fully considered by chancellor Kent, 1 Johns. Ch. Rep. 620. who there held, that if an executor convert the trust moneys to his own use, or employ them in his business or trade, he is chargeable with compound interest. After shewing the injus *214 tice which would be done to the infants by denying ° compound interest, he observes—“ ihe fund, instead of accumulating for the benefit of the infants, would accumulate for his benefit. A man in trade could afa lar§e premium for letters of administration on a rich estate, especially if the infant heirs were young. What temptation would thus be held out for negligence and delay in rendering an account!” In the case of Childers v. Deane &c. judges Green and Carr both admit there are many cases in which the taking of compound interest is lawful. Judge Carr says, “ There are still some special circumstances, under which compound interest is allowed; as where a settlement of accounts takes place after interest becomes due, and an agreement is then made, that interest due shall thereafter carry interest.” This is, in effect, the precise condition in which the guardian neglecting to settle under law is placed by the law. He should have settled; and the law treats him as though he had settled. The balance in his hands is a debt then ascertained to be due to the ward, and is to be loaned out for his benefit. Being retained by the guardian, he is to be treated as the borrower, and is to pay interest. Borrowing from himself, he guaranties the punctuality of the borrower. It would be unjust to the ward, to permit the guardian to apply the current income of the year to defray his own disbursements, whilst at the same time he was a debtor to his ward for the interest then due on former balances. This is conceded by the decree in this case, which applies the disbursements to the interest. But the excess of interest is as much a debt as that which is so extinguished. As between debtor and creditor, the latter may permit it to remain a dead capital in the debtor’s hands: this is matter of contract between them. But the statute requires annual settlements; thereby, as it seems to me, requiring annual investments. A contrary principle would violate the spii'it of the act, which, *215 not only for the purpose of investing these balances, but to ensure the constant superintendence of the court over the proceedings of the guardian, enjoins annual settlements, and even subjects the judge and justices to amercement for neglect in enforcing them. A premium would be held out to omit the performance of this duty. The contrary rule subjects the guardian to no hardship. When he settles his account, the balance due is invested under the order of the court, and all responsibility is avoided. Though, under special circumstances, the court might authorize an investment at simple interest, such cases would be rare in our country, where money is always in demand. Little difficulty would be found in lending, on good security, to individuals willing to pay the interest annually; especially when, if they did so, they would be permitted to retain the principal in their hands for a long period. The guardian at least should not, by his election to retain the money, deprive the ward of the chances of such a profit.
I think, therefore, that the chancellor erred in sustaining the exceptions to the first report on this ground. That report, however, was erroneous in not crediting the payments to the legatees after the termination of the guardianship, as of their respective dates, so as to stop interest pro tanto at those dates. With that exception, it should have been confirmed.
As to the matters involved in the supplemental bill: The subject in controversy did not come into the hands of Dabney Minor as executor of Richard H. Allen. It was an increment to the estate of the wards, accruing after the death of their father, from a source distinct from his estate. I think the account should be kept separate from the accounts of Dabney Minor as executor of that estate. He held the land and slave under an arrangement with the other heirs and legatees of mrs. Yancey and her husband, by which he purchased their interests in the subject at a stipulated price; and *216 he charged himself, in his account with his wards, with .. . their proportion of the same subject. It is admitted that he had no right to do this; that it was not in his power, by a charge in his books, to appropriate to himse^f estate of his wards. And the question arises, how his account respecting this subject is to be adjusted. In the opinion delivered in this case by the president of the court, he observes (3 Leigh 417.) that “one of the parties” (meaning Dabney Minor) “ seems to have been the actual, though not indeed the legal guardian of the children; and he who so acts, ought to be charged as such. It is absurd to suppose that he can be justified in doing that which even the legal guardian cannot do. It is for his own benefit to consider him as sustained in his acts, as quasi guardian. In tenderness to him, he is justified in doing what the guardian might do ; but upon no principle is he justified in doing more.” Treating this defendant then as actual guardian, his duty required him to deliver into court an inventory of any other estate belonging to his ward, and afterwards to settle his annual accounts of the produce. This he failed to do : but the court, upon the principles already adverted to, must settle with him as though he had performed his duty. In adjusting the account, it must treat him as if be had returned an inventory of this additional estate, and in his annual settlements had charged himself with the hires of slaves and rent of land. The surplus of such rents and hires, upon the principles already discussed, must be brought into the account, and bear interest. Otherwise the defaulting guardian would be in a better condition than he would have been if he had complied with his duty. The rule which in most cases denies interest on conjectural hires and rents, ought not to be extended to such a case ; for that would be to hold out an inducement to guardians to neglect their duty in rendering accounts. It therefore seems to me, that this account should be settled upon precisely *217 the same principles which govern the other; that annual rests should be made in the account, and the balances be added to the principal, so as to constitute an interest-bearing fund; and that the account should be so stated and settled until the wards respectively arrived at age or married, or the guardianship terminated, from which period the account should be stated upon the ordinary principles between debtor and creditor.
Cabell, P.
The decree of this court, which remanded these causes to the court below for the purpose of reforming and restating the accounts, having directed that “ the accounts of the land fund and the hires of slaves” should be stated and treated “ as guardians’ accounts,” the question now arises whether those directions have been complied with; or in other words, whether those accounts have been stated and settled upon the principles which ought to govern the statement and settlement of guardians’ accounts.
The appellants insist, that these accounts should be stated and settled annually; that, at every annual statement and settlement, the excess of interest due from the guardian, over and above the expenses of the ward, should be so charged to the guardian, as that it may become an interest-bearing fund until the next annual settlement; that then, if the interest due from the guardian should again exceed the expenses of the ward, the excess of such interest should again be so charged as to become an interest-bearing fund as aforesaid ; and so on, toties quoties, until the final settlement of the accounts.
I am of opinion that the claim of the appellants to have the accounts thus stated and settled is just in itself, and is sanctioned and required by the obvious spirit, if not by the express terms, of the act of assembly.
*218 The 7th section of the act concerning guardians and wards requires every guardian to exhibit to the court in which he qualified, “once in every year, accounts of the produce of the estate, of the sales and disposiof such produce, and of the disbursements; which accounts shall be examined by the court, or by such persons as the court shall refer them to.”
The importance which the law attaches to these annual settlements is manifested by the provisions of the 8th section, which declares that every guardian who fails to render such accounts as are required by the 7th section, “ shall, by order of the court to which he is amenable, be summoned, and if he remain in default, be compelled to perform his duty, or be displaced:” and, what is not a little remarkable, the act goes on to declare, that “ every judge or justice of the court, sitting therein at any time during the term of session in which such process ought to have been ordered, if it be not ordered accordingly, shall be amerced.”
Then comes the 9th section, which provides, that “ if the disbursements of such guardian, being suitable to the estate and circumstances of the ward, shall exceed the profits of his or her estate in any year, the balance, with the allowance of the said court, may be debited in the account of a succeeding year, and paid out of the personal estate of the infant. And the balance appearing on the contrary side may be put out to interest for the benefit of the ward, upon such security as the court shall direct and approve; or the guardian, if it remain in his hands, shall account for the interest, to be computed from the time his account was or ought to have been passed.”
It is clear, then, that the law requires annual settlemenls, on which a balance shall be struck, in order that that balance, if found in favour of the ward, may be made an interest-bearing fund for the benefit of the ward, either by actually putting it out to interest, or *219 making the guardian, if it remain in his hands, account-i • able for the interest.
Suppose, then, a guardian, honestly desiring to comply with the law, shall, at the first proper court, exhibit his accounts for settlement. At this first settlement no question can arise as to a charge of interest against the guardian, because no interest can as yet have become due from him as guardian. But all must admit that if on this settlement a balance shall be found in favour of the ward, the guardian becomes accountable for interest on that balance, if it remain in his hands, to be computed from the time his account was passed.
Let us next see what is to be done at the second regular annual settlement, when the guardian, as before, actually exhibits his accounts.
He will, of course, credit himself with all his proper disbursements; and he ought to debit himself with every item of “the produce of the estate;” an expression sufficiently broad to include not only the proceeds of crops, hires of slaves, &c. but all sums of money belonging to the ward and received by the guardian, from whatever source they may have come. It will clearly embrace money which he has actually received; as interest on a debt, from a debtor of the ward. It will also, in my opinion, embrace any interest due to the ward from the guardian, as guardian, at the date of the settlement. Such interest may emphatically be said to be, in the language of the 9th section of the act, a part of the “ profits” of the ward’s estate; and being due from the guardian, and in his own hands, the policy of the law and the dictates of justice require that it should be charged to him in the annual settlement, in order that the excess of interest beyond the expenditures may be converted into an interest-bearing fund for the benefit of the ward. I can perceive no difference in principle between interest due from him as *220 guardian, and actually in his own hands, and interest which he may have received from a debtor of the ward.
The surplus of interest due from the guardian at the date of the second settlement, being thus converted principal bearing interest, what disposition is to be made, at the third regular annual settlement, as to the interest which may have then accrued upon it? If we bear in mind that the law requires annual settlements at the hands of guardians, in order that each successive balance in favour of the ward (of whatever it may consist) may become an interest-bearing fund for the benefit of the ward, we cannot avoid the conclusion, that the interest which has accrued on the balance found due from the guardian at the date of the second settlement, must be charged to him in the third. It is in this way only, that the just and beneficent object of the legislature can be effected. And the same principles of justice and policy, which thus govern the second and third settlements, will apply to and must govern all succeeding settlements, until the termination of the guardianship, ■by the ward arriving to age, or otherwise.
If such be the principles which are applicable to guardians’ accounts, when the guardians settle regularly according to the requisitions of the law, what shall be done in the case of guardians who (as in the present case) disregard the law, and exhibit no accounts until they are called upon by their wards, in a court of equity, for a final settlement of their transactions ? It would indeed be a strange anomaly if a court of equity should treat such guardians with more indulgence than is extended to those who have faithfully and punctually obeyed the law. It would be to offer a premium for negligence, and' sometimes for dishonesty. All that the courts can be expected to do in such cases, is to have the accounts stated with annual rests, and to have them settled upon the same principles as would have governed the settlement if the guardians had regularly and *221 annually exhibited their accounts; always charging them with interest from the lime when they would have been accountable for it if the accounts had been in fact settled. This is justice to the ward ; and although it may operate with hardship upon the guardian, he has no right to complain of it; for it is the result of his own culpable violation of a positive duty. If he wishes to avoid the hardship of the operation, let him settle up his accounts, carry the balance due from him into court, and request that it may be put out to interest, under the direction of the court.
It will be observed, that my opinion has been formed by an exclusive regard to the provisions of our law concerning guardians and wards. It derives additional strength from the cases referred to by judge Allen, which shew, that even in the settlement of executors’ accounts, interest due from them is sometimes converted into principal.
I am further of opinion that the accounts in relation to the estates or interests claimed by the appellants in their supplemental bill, ought also to be stated and treated as guardians’ accounts ; Dabney Minor having, by his acts in relation to said interests, made himself guardian de facto.
I am farther of opinion that the case of a guardian indebted to his ward for estimated rents of land and hires of slaves, forms a just exception to the general rule, that interest is not to be allowed on estimated rents and hires. We have seen that even the surplus of interest due from a guardian, over and above the expenses of the ward, is to be carried into the accounts, so as to become an interest-bearing fund; and surely the guardian cannot claim to stand on higher ground as to estimated rents and hires due from himself. They should be carried into the accounts at the annual settlements, and become thenceforward an interest-bearing fund, as in the case of other balances.

 Note by the reporter. Some of the points adjudged on the supplemental bill are not without precedent, even in England. In Quarrell v. Beckford, 1 Madd. Ch. Rep. p. 268 of eng. edi. and p. 151 of am. edi. it appeared, on taking an account between a mortgagee in possession and the mortgagor, that the former had been overpaid; and it was claimed that he should account for what had been overpaid, with interest. It was admitted on both sides, that the question as to interest was perfectly new. The vicechancellor (sir Thomas Plumer) considered it on principle altogether, and held that the mortgagee was to be charged with interest. He so held, upon the ground that the mortgagee, as soon as he was paid, was a mere trustee, holding the legal estate for the benefit of his cestui que trust, the mortgagor, with whom he was hound, by the nature of his trust, faithfully to account. “ The case,” says the vicechancellor, “ is assimilated to a simple contract debt which does not carry interest; it is compared also to the case of mesne profits improperly received by a trespasser; in which cases, it is clear, the courts of law and equity are not in the habit of charging the party with interest. What analogy do these cases bear to the present? The main point here does not exist in those cases; viz. a sum due from a trustee to a cestui que trust. The mesne profits are received by an adverse holder, by a trespasser, where there is no privity between the one and the other; but here the profits are received under an implied contract by the mortgagee to account. That is not like the case of a trespasser receiving mesne profits. This mortgagee received the rents as trustee. He received them to pay himself first, and afterwards to account to the mortgagor. He has therefore made himself liable to account. A relation is established as between trustee and cestui que trust, and the moment the mortgage is paid off, he is converted into the situation of a bare naked trustee. All the money received from that time is money received by a trustee, having a legal estate in his hands, and receiving the rents and profits of such estate, which he holds as trustee for another.” In Wilson v. Metcalfe, 1 Russ. 530. the mortgagees were in the occupation of part of the mortgaged premises, and in the receipt of the rents and profits of the remainder. In respect to the part in their occupation, an occupation rent was directed to be fixed by the master. When his report came in, it appeared that the mortgagees had been long overpaid. And then the question was made, whether the court could order annual rests *224 to be made in the account of the occupation rent, as well as of the other rents and profits of the mortgaged premises, and interest to be computed against the mortgagees. The master of the rolls (lord Gifford) had no doubt on this question. “If,” said he, “a mortgagee, receiving the rents of a mortgaged estate after his debt kas keei1 satlsfi-e(l) <loes not immediately pay them over to the mortgagor, but retains them to his own use, he is availing himself of another man’s money, and ought to be charged with interest. Is his situation substantially different, when he is in the actual occupation of the mortgaged premises 7 Though he is not in receipt of rent, he is, in fact, in receipt of profits; and these he keeps in his pocket. What the master has done in fixing an occupation rent of thesé premises, has merely been, to estimate the fair yearly rent which an occupier ought to pay for them; he does not consider what ought to be done in respect of the rent having been retained for many years by the actual occupier.” It was therefore referred back to the master, to make annual rests in the account of the rents received by the mortgagees, and the occupation rent due from them, and to compute interest after the rate of 4 per centum per annum upon such rents and occupation rents. These decisions sustain the court of appeals, 1. in allowing interest upon the yearly value of the land and slave of the ward, possessed by the guardian; and 2. in making annual rests, so that interest may be computed from the end of every year, upon the value for that year. To. what time the interest on such value should be computed; whether until payment, without any compounding; or only until the end of a year, so as to make the surplus interest beyond the disbursements of the year an interest-bearing fund,—was a question in this case, depending upon the interpretation of the statute concerning guardians.