The opinion of the Court was delivered by
Johnston, Ch.
No other defendant than E. P. Starr has excepted to the Commissioner’s report, or appealed from the decree pronounced by the Chancellor upon it: and, therefore, this Court can take notice of no other defendant’s case.
The first and second grounds of Mr. Starr’s appeal present the question, whether the Chancellor was mistaken when he adjudged that the previous proceedings established the priority of the Bank’s mortgage over Mr. Starr as general creditor of Robt. *318 Boyce and as assignee of Jeannerett’s mortgage; and, if so, whether it is not competent for the Court, in this stage of the suit, to re-examine and re-adjudicate that matter.
If the proceedings, referred to, do establish the priority of the Bank’s mortgage ; and if, according to the practice of the Court, this point is not, now, open to re-examination, it will be unnecessary to consider the 3rd and 4th grounds of appeal, corresponding to the 1st and 2nd exceptions to the report.
If we examine the bill filed the 2d July, 1840, we shall find that it states minutely all the circumstances relating to the death of the intestate, his great indebtedness, the application to the Court for leave to mortgage a portion of the real estate to the Bank, for a loan, the purposes, beneficial to the estate and its creditors to which the loan had been applied, &c., and submits the estate, thus circumstanced, as a fund for creditors and claimants — who were accordingly called in, agreeably to the practice in this State, to present their demands and adjust the order in which they were to be satisfied.
It appears that many creditors came in and rendered their demands ; but it is only material to notice that among them was Mr. Starr, claiming then as a general creditor, and that among the liens presented were the mortgages of Ker Boyce, the Bank, and Jeannerett, (since purchased by Starr.) See Mr. Laurens’s report 29th Jan. 1841, and schedule attached.
This report, which gave the priority to the three mortgages, over all other claims, (without deciding the priority among the mortgages themselves) was confirmed. Indeed there was no exception taken to it. This certainly was enough to conclude Mr. Starr as to the demand he then held as general creditor. He did not except to the report; or if he had done so, the order of confirmation was an overruling of his exception.
Moreover, if I were now considering his third ground of appeal, I should hold that it was concluded by this order of confirmation. For let it be granted that a mortgage by the heirs, within the nine months following the intestate’s death, during which his creditors are restrained from suing the admin *319 istrator, is not an incumbrance which can displace the creditor’s right to be paid out of the land thus mortgaged: was not the report of the Commissioner, giving full effect to the mortgage over the intestate’s creditors, subject to Mr. Starr’s exception ? and why did he not except?
But there is something in the order confirming this report, which goes still further. Mr. Starr, as I have said, was a party representing his demand as a general creditor, and was there-foreconcluded by his silence from afterwardscontesting either the legality or the priority of the Bank’s mortgage. Upon the same principle, the then holder of Jeannerett’s mortgage, also present, having acquiesced in the report setting forth the mortgage of the Bank as a lien on the real estate, was concluded from afterwards contesting its validity, or objecting that it was not a lien and among the preferable liens on that estate. I do not say, now, that he acquiesced in allowing it expressly a priority over his own mortgage. That is a distinct consideration. But the fact of its validity and of its general efficacy as a lien on the intestate’s real estate, and the further fact that among all the claims it stood among the three foremost,' — these points are certainly settled by the report and the order confirming it.
Then the enquiry presents itself, What is the order of legal priority established by law, between Jeannerett’s mortgage and the mortgage of the Bank, both admitted to be valid, and both admitted to be liens on the real estate of Robert Boyce? What is it? Can there be any other answer than that given by the Statute of 1698 — that that mortgage of the same property is to be preferred which is first registered ?
There are, throughout the whole proceedings, numberless other evidences that this mortgage of the Bank was considered by every party, by the Masters and by the Court, as second only to Ker Boyce’s mortgage, which was the oldest and first recorded. But as the exhibition of these evidences would involve the labour of selecting and bringing together many passages, and would protract my observations to a length that I would avoid, I content myself with what I have said.
*320 I turn, then, to the enquiry, whether the matters thus closed by the acquiescence of parties could be opened at any future stage of the proceedings, or can be now re-examined.
The observations of Spencer, J. in Wilkes vs. Rogers, (a) are very sound and instructive. “ Exceptions,” says he, “ partake of the nature of special demurrers : and if reports are erroneous, the party must put his finger on the error. When he does so, the parts not excepted to are admitted to be correct; not only as it regards the principles, but as relates to the evidence on which they are founded. It is my opinion that the Court of Chancery cannot set aside a report upon exceptions not taken, and require further proof, where parties whose interests would excite them to make every possible objection, are satisfied.”
We have numberless adjudications that where a party has had an opportunity to except, and has not excepted, he cannot again bring the matter of the objection either before the Master or before the Court, on circuit or on appeal. The principle is essential to the due and orderly administration of justice; and must have a place in every well constituted forum. If at law, a party pleads to special points, neglecting other points, he acquiesces in the pleading of his opponent, relating to these points which he does not contest; and so here, and everywhere.
We have other cases to the effect that if a party appeals he is concluded from considering points not covered by his appeal: and after the appellate judgment is delivered upon the points to which the appeal refers, he is not at liberty, afterwards, in any future proceeding in the cause, either on circuit or in the Appeal Court, to claim a consideration of the ground he has passed over and lost. See the opinion of Chancellor Harper in Britton vs. Johnson (b). A party who brings up a partial appeal, loses every ground of appeal then existing, which he neglects and leaves behind him; and cannot afterwards stir the objections thus lost by his supineness or acquiescence. When the decrees pronounced by my brother Wardlaw and myself were appealed from, everything behind them to which *321 the appealing parties have objected should have been brought up with them; and if the party had not objected, and so had no ground for appeal then, he has no greater ground now.
It is lamentable that the decision of Price vs. Nesbitt, so often quoted, was ever made. It has been a source of annoyance ever since it was pronounced. It seems that no amount of explanation or repudiation can prevent its being cited as authority. Seventeen years ago, enough was said in Britton vs. Johnson to prevent any further recurrence to it. All other means failing, I am prepared to expressly overrule it.
But if we could re-examine the point touching the priority of the Bank’s mortgage, what possible objection could be made to it ? If the loan obtained by the heirs of Boyce upon this mortgage had been put in their own pockets, the creditors of Boyce might have complained of the incumbrance created by the heirs. But ,$7,000 of the money went to the extinguishment of Ker Boyce’s mortgage which is admitted to be the first lien on the estate. Surely the Bank is entitled to stand in his place, to that extent. The residue of the loan was expended in erecting buildings upon the premises in lieu of building consumed by the fire of April, 1838, in the lifetime of the intestate. It is not pretended that the sum thus expended did not add an equivalent value to the premises, when subsequently sold. Who then is entitled to the amount which the buildings thus erected added to the premises'? Surely he who created the property out of his funds; and not creditors who are not prejudiced by it.
We come now to enquire whether the report and decree are erroneous, upon the subject of rent.
The points are settled, by previous decisions in the case, that Starr was a party to the suit at the time of his purchase in 1842; and that his purchase was impeachable, and made in contempt: and his purchase was set aside. While in possession, he endeavored to fortify his right to retain the property thus obtained, by purchasing in Jeannerett’s mortgage.
If in fact that mortgage had been the oldest and best, I should have hesitated to allow him any advantages arising from its *322 acquisition under the circumstances. But being not the best mortgage, the decision in Matthews vs. Preston is conclusive, that the rents must go to the mortgage of the Bank, which is better.
To say, (as one of the grounds of appeal has it,) that as assignee of Jeannerett’s mortgage, he was mortgagee in possession, and entitled, as such, to take the rents, is to forget that he was in possession as tortfeasor, and only got in this mortgage to sanctify his possession, and that the Court, in turning him out, declared his conduct tortious throughout, and that his possession was not the possession of a mortgagee.
One of the grounds of appeal insists that he did not get possession, nor obtain rent, until one year after his purchase, and should not have been charged the rent of that year. If the fact were as stated, the inference drawn from it does not follow. Nor does it follow that because he has returned all the rent he could get from his tenants, therefore he should not account for the fair rentable income of the property. The property was in the custody of the Court, and he by his interference to the prejudice of his co-parties to the suit, may have put it out of his power for a considerable time to procure an attornment from the tenants in possession; and it may be that he could not get the attornment from some of them without reduciug their rent to a nominal sum. This is the complexion of the evidence. Shall he therefore be excused from answering for the rent that could have been obtained, but for his interference ?
The Court is of opinion that, upon all points made by Mr. Starr, the decree must stand.
But upon the ground taken on the other side, we are of a different opinion. If rent had been received from regular tenants, it would have been charged, according to the familiar practice, with interest from the end of the year in which it was received. It is the opinion of the Court that it should have been so charged in this case. The Court might, in its discretion, go further, and, upon the principle in Schieffelin vs. Stew *323 art, (c) have charged him with annual or even semi-annual rests. A trustee, or quasi trustee, who takes the trust property to himself for his own advantage, may be thus treated. Mr. Starr took possession of property in this Court as a trust fund for the payment of creditors before the Court', lie being one of them, and is entitled to little indulgence. But we are not disposed to press him too far. We adjudge him liable to. pay simple interest on the rents of each year, from the end of the year: and excuse him from liability to have the interest compounded. If it is compounded in the report, that must be corrected.
It is ordered that the decree be modified by sustaining the plaintiff’s exception, as just explained, and that in all other respects it be affirmed, and the appeal dismissed.
Dunkin and Wardlaw, CC., concurred.

Decree modified.

 6 Johns. R. 591.

 Dud. Eq. 28.

 1 Johns. Ch. 620.