# BRYANT v. CRAIG.

1. A guardian who fails to make annual settlements of his accounts, is liable for interest on the funds in hand; but is not liable to be charged compound interest, unless he is guilty of such gross neglect, as is evidence of fraud. The mere omission to make annual settlements, is not evidence of fraud, so as to authorize the charge of compound interest.

2. A guardian may apply to the orphans' court for authority to invest the

Bryant v. Craig.

funds of his ward, and if lost without his fault after such investment, he will not be personally responsible.

3. In settling the accounts of a guardian, the court should charge the guardian with interest on all money of the ward in his hands, from the time of its receipt, and allow him interest on all disbursements from the time they were made, the interest due from the guardian to extinguish *pro tanto*, or in full as the case may be, the expenditure of the ward.

Writ of Error to the Orphans' Court of Greene.

On the final settlement of the accounts of the defendant in error, as guardian of Joseph H. Bryant, it appeared that the guardian had received for his ward a large sum of money. There was no evidence to show that he had lent, or attempted to lend the money so received by him. The ward then moved the court so to state the account, that at the end of each year, after the receipt of the money by the guardian, a balance be struck, and that the balance so struck, with interest for one year, be carried into the account of each succeeding year, which, with the amounts received during the year, will make the sum, with which the guardian should be charged, and from that sum so made up, deduct the payments made by the guardian during the year, and strike a balance; and that the balance so struck at the end of each year, with interest as above, be carried into the account of each succeeding year. This motion the court overruled, and audited the account, by allowing interest upon the receipts, and disbursements, up to the settlement, without making annual rests, and carrying the annual balances, with interest, into the account of the succeeding year.

This is now assigned as error.

Bliss & Baldwin, for plaintiff in error.

I. The court erred in refusing to audit the account, so as to make rests and compound the interest.

Admitting that it is not proper ordinarily to compound the interest, yet it is proper in peculiar cases; of which this is one.

Here the trustee acted with gross neglect, in which cases

he should be charged after this mode. [2 Kent's Com. 188; Fay Judge v. Howe, 1 Pick. 527; Raphael v. Boehm, 11 Vesey, 92; Schieffelin v. Stewart, 1 Johns. R. 620, and authorities cited; Hill on Trusts, 374; Ib. 523; 2 J. J. Mar. 240; 1 Pirtle's Dig. 491.]

II. The guardian used the money himself for many years, and might have, but wholly failed to, invest it. He is to be considered a borrower on such terms as others would have borrowed; and by these he would have collected interest annually and loaned it out. [Whiting, et al. v. Walker, et al., 2 B. Monroe, 262; Handley v. Snodgrass, 9 Leigh, 484; Garrett v. Carr, 3 Leigh, 407; Comegys v. Dykes, 10 Gill & Johns. 180.] And his failure to make annual settlements put him in no better situation than if he had made them; in which event the interest would have been productive. [1 J. J. Marsh. 440; 1 Pirtle's Dig. 491; see also, De Peyster v. Clarkson, 2 Wend. 77.]

III. The English rule, founded upon the different state of things as to value and abundance of capitol, between Great Britain and this State, is not applicable here; and the facility of investment, at compound interest, especially where the fund is in hand a long time, is difficult. The *rule* on which the English mode of computation is founded, that no profit shall be made by the trustee, requres this.

IV. But if the court did not err in adopting the rule invoked by the plaintiff, it did err in adopting the principle on which it audited the account.

1. The interest accruing on the ward's capital, and due from him to the ward, is to be applied to the disbursements made for the ward's support. [Garrett v. Carr, 3 Leigh, 416; 2 Lomax on Ex. 352; Chaplin v. Morris, 7 Monroe, 163; McCracken's Heirs v. McCracken's Ex'r, 6 Monroe, 349; Whitledge's Heirs v. Cullis, 2 J. J. Marsh. 404.] In this case the capital of the ward is trenched on, which cannot be done. [See particularly De Peyster v. Clarkson, 2 Wend. 77.]

2. By the principle the court adopted, it results, that in eighteen years and ten months, the principal sum is paid off by paying punctually the interest, and counting interest on the payments.

3. The rule between the debtor and creditor is, to apply a payment to interest. [2 Com. Dig. 669; 2 Johns. Cr. R. 200.] Equitably, a guardian owning interest on his ward's money is debtor—indeed he is technically a debtor.

V. A guardian advancing, as in some instances in this account, beyond the income of the ward, will not be allowed interest on a balance due for maintenance. [McDowell v. Caldwell, 2 McC. Ch. Rep. 297.]

VI. There is no difference between a guardian and an executor with a trust to put out the funds; for the law requires this by the guardian.

J. B. CLARKE, for the defendant in error, made the following points:

1. That the orphans' court is a court of law, and possesses no power to make annual or other rests, in a guardian's account, so as to give to the ward compound interest, or interest upon interest, against the guardian. [Clay's Dig. 198, § 28; 226, § 27; 267, § 3; 2 Peters' Rep. 338; Hopkins' R. 424.]

2. A court of equity could not charge the guardian with more than legal interest, unless the evidence showed that the guardian had made more, or unless he refused to disclose his profits. [2 Kent's Com. 230, 231; Hop. R. 424; 10 Ala. R. 900, 914; 2 McC. R. 200.]

3. The rule of the English chancery of charging what is termed equitable interest against a trustee, does not seem to have been adopted in this country, nor to be very satisfactory there. [5 Ala. R. 313; Hop. R. 424; 2 Wend. 77; 2 McC. Ch. R. 255, 267; 2 Porter, 378; 8 Eng. C. C. Rep. 178; 10 Ala. Rep. 900, 914; 5 Rawle, 323; 2 U. S. D. 482, § 121; 1 Bin. 194.]

4. The rule to compute legal interest in the receipts and disbursements, is practical and just to the parties, and the one sustained by this court. [Cunningham and wife v. Poole, 9 Ala. R. 615.]

5. Computing interest on the balance at the end of the year, from that time to the final settlement on the receipts and disbursements of the year, for or against the guardian as that balance may be shown, presents a more simple and prac-

tical mode of stating the accounts, than to compute interest on each distinct receipt and disbursement, and is equally just and certain in the result.

ORMOND, J.—The manner in which the account of the guardian was stated, presents the question, whether a guardian who retains his ward's money in his hands, without investing it, is subject to have annual rests made in his account, and charged compound interest.

The general rule applicable to all trustees is, that they should not be permitted to make a profit for themselves, by the employment of the funds in their hands, and if it be invested in trade, or otherwise profitably employed, the *cestui que trust* may insist on the profit so made, if he elect to do so. No question of that kind is made here, as it does not appear how, or in what manner these funds were employed by the guardian.

But although a trustee may not have invested the trust funds in such a manner, that the profits made by their employment can be ascertained, yet if he suffers the fund to be idle, when the terms of the trust, or the general law, requires it should be invested, so as to yield a profit, he is chargeable with simple interest; or if he is guilty of such gross neglect in the execution of the trust, as to be evidence of a corrupt intention, he may be charged with compound interest. These principles are fully illustrated in many cases, of which the following may be cited as examples: Foster v. Foster, 2 Bro. C. C. 616; Raphael v. Boehm, 11 Vesey, 92; Pocock v. Redington, 5 Id. 794; Dornford v. Dornford, 12 Id. 127; Scheiffelin v. Stewart, 1 Johns. Ch. 620; Clarkson v. De Peyster, 1 Hop. 424.

As the guardian could not be guilty of negligence, in not investing the money of his ward, unless the law requires him to invest it, the first question which naturally presents itself is, what is the law upon the subject? Our statute law, though very full and particular, as to the mode of appointing guardians, making settlements with them, &c., is silent upon this particular. It results however, necessarily, from the nature of the trust, that the estate of the ward should be profitably employed, as otherwise it would be consumed, and

Bryant v. Craig.

where it consists of money, this could only be by lending it out on good security. In England, a trustee whose duty it is to invest the money in his hands, is exonerated from liability, by investing it in the public funds, which, as the court would direct to be done on application, it will sanction if done without such application, and he will be exonerated from liability, though the stock should fall in value. [Franklin v. Frith, 2 Bro. C. C. 433 ; Holmes v. Dring, 2 Cox, 1.] In Smith v. Smith, 2 Johns. C. 284, Chancellor Kent seems to think, that personal security is insufficient, and that a trustee lending money, must require adequate real security, or resort to the public funds. Here are no public funds in which money may be safely and securely invested. At least there has been none until very recently, and it is not probable we shall be long burthened with a public debt.

Personal security, no matter how good it was deemed at the time, would not be sufficient; and it may be added, that with us, real property is subject to such fluctuations, that it is by no means an adequate security : and it may very well be doubted, whether he would not be personally liable, for any loan he may have made of the money, without the sanction of the court, no matter what security he may have taken. Our statute appears to have intended to place this whole matter under the direction of the orphans' court, as it invests that court with power to direct a sale of the land of the ward, if the personal estate, and the rents and profits of the realty, were insufficient for his support ; and it appears to follow necessarily, that the same court would have the power to direct in what manner the money of the ward should be invested. It was the duty of the guardian, if he desired to exonerate himself from the payment of interest, to apply to the court for direction in the investment of the funds, who would have examined the proposed security, and whose approbation would have exonerated the guardian from liability, if afterwards lost without his neglect.

The guardian having omitted to make this application, must pay interest on the funds in his hands, whether they have been profitable to him or not, and we next proceed to inquire, whether this is such gross negligence, as will autho-

rize rests to be made in the account, for the purpose of charg-
ing him with compound interest.

The general rule undoubtedly is, that where it is the duty
of the trustee to invest the trust funds, and he fails to do so,
he is chargeable only with simple interest. See the cases
already cited, and Newton v. Bennett, 1 Bro. C. C., in the
note to which, Mr. Eden has collected all the authorities, es-
tablishing conclusively, that for neglect merely, the practice
of the court is, to charge interest at the rate of four *per cen-
tum*. Where the trustee is guilty of fraud or corruption, as
where, in open violation of the trust, he applies the funds to
his own use in trade ; converts the property, or securities, as
for example, stock, into money, and applies it to his own use ;
or otherwise corruptly and fraudulently abuses the trust re-
posed in him ; he may be charged with compound interest.
The first case, it is said, in which compound interest was
charged against an executor, is Raphael v. Bœhm, 11 Vesey,
91. That was a case of gross misconduct, and violation of
the terms of the trust, by embarking the funds in trade, in-
stead of investing them for the purpose of accumulation, as
directed by the will. The principle established by this case,
does not appear to have been followed in cases, where the
facts appear to be very similar. [See Ashburnham v. Thomp-
son, 14 Vesey, 402, and Tebbs v. Cunningham, 1 Madd. R.
291.] In this last cited authority, all the cases are collated,
and elaborately examined ; and although there was in that
case a direction in the will, that the assets should be invested
in the public funds, which was not done, yet the vice chan-
cellor refused to allow compound interest. He sums up an
elaborate, and able view of the authorities, thus : " It ap-
pears, therefore, from this view of the authorities, that a dis-
tinction has been taken, as in every moral point of view there
ought to be, between *negligence*, and *corruption* in execu-
tors. A special case is necessary, to induce the court to
charge executors with more than four *per cent.* upon the bal-
ances in their hands. The obligation on executors, to lay
out balances not wanted for the exigency of the testator's af-
fairs, is now better understood, since it has been settled that
they are indemnified against any loss, in laying them out in
the fund which the court sanctions, the three per cents. If

the executor has balances, which he ought to have laid out, either in compliance with the express directions of the will, or from his general duty, even where the will is silent on the subject, yet if there be nothing more proved, in either case, the omission to lay out, amounts only to a case of *negligence,* and not of *misfeasance.*"

Chancellor Kent, in Schieffelin v. Stewart, 1 Johns. Ch. 620, adopts the stringent rule laid down in Raphael v. Bœhm, *supra,* without adverting to the distinction, between neglect and fraud; but in the subsequent case of Clarkson v. De Peyster, Hop. Ch. 424, the chancellor refused to allow compound interest, in a case, in all its material features not distinguishable from the case before us, and the decision was affirmed on appeal.

The cases cited from the Tennessee and Kentucky Reports, are not applicable in this State. In both those States, statutes exist, requiring the guardian to invest the money of his ward. [Hughes v. Smith, 2 Dana, 252; Torbet v. McReynolds, 4 Hump. 215; 1 vol. Kentucky Stat. 768; Car. & Nicholson's Dig. 368.]

The charge of compound interest, seems to be adopted as a punishment, in those cases, where from the gross mismanagement of the trustee, it is difficult, if not impossible to ascertain, what the income of the estate would otherwise have been; but it may be safely asserted, that no estate in money, under the most judicious management, can be made to yield compound interest, at the rate of eight *per centum.* If it had been annually invested, under the direction of the court, some delay must have been encountered, in finding a person desirous to borrow, and able to give the necessary security. It is not reasonable to presume, that where so lent, it would always be punctually paid, so as to be immediately re-invested; nor can it be doubted, that it would frequently be necessary to coerce payment by suit; and that after every precaution had been taken, both principal and interest would occasionally be lost. The charge of compound interest, therefore, is unjust, because the estate could not have yielded that by any prudent management in the hands of the owner, had he been of age to manage it himself.

46

Bryant v. Craig.

The mere omission of the guardian, to apply to the court for authority to invest it, and the failure to make annual settlements, are not evidence of fraud, but establish negligence merely, and the court therefore acted correctly in refusing to allow compound interest.

We come to the consideration of the remaining question. In stating the account, the judge of the orphans' court charged the guardian with interest on money received by him, and allowed him interest on the sums disbursed, calculating each from the time it accrued, to the time of the settlement. This was erroneous. The statute previously cited, requires the guardian to render, at least once a year, an account of his receipts and disbursements. If this had been done, the disbursements would have been extinguished, *pro tanto*, by the interest, which the guardian should have charged for the money of the ward in his hands, and he cannot place himself in a better condition, by this neglect of duty, than if he had performed it. It could not be tolerated, that the guardian should hold the estate in his hands for a number of years, use the interest of the ward's capital, or which comes to the same thing, neglect to apply for its investment, and encroach annually upon the capital for the support of the ward; for this is the effect of the mode of accounting adopted by the court.

If it was shown, that the guardian was compelled to keep on hand a certain sum of money to meet the expenditure of his ward, it would be the duty of the court not to charge interest on such sum. In the absence of such necessity, which is not shown, and which probably did not exist, it was the duty of the court to charge the guardian with interest on all money of the ward in his hands, from the time of its receipt, and allow him interest on all disbursements from the time they were made; the interest due from the guardian, to extinguish *pro tanto*, or in full, as the case may be, the expenditure of the ward. For which purpose, if necessary, the court will make annual, or longer or shorter rests in the account, so as to carry fully into effect the objects and purposes of this decree; but so as not in any manner to compound the

interest against the guardian. These principles are clearly stated in the case of De Peyster v. Clarkson, 2 Wend. 77, and in other cases cited in the brief of the counsel for the plaintiff in error, and meet our entire approbation.

The decree of the orphans' court must be reversed, and the cause be remanded for another settlement, and that the account may be stated in conformity herewith.