41  369
103  409

# CALHOUN *vs.* CALHOUN.

[FINAL SETTLEMENT OF GUARDIAN'S ACCOUNTS.]

1. *Liability of guardian for compound interest.*—A guardian is not chargeable with compound interest, on settlement of his accounts, unless he has been guilty of such gross neglect as is evidence of fraud; and the mere failure to make annual settlements is not such gross neglect.

2. *Allowance to guardian for necessary expenses of ward.*—Where the annual income of the ward's property, or the legal interest on the money which comprises her estate, is not sufficient for her support and maintenance, the guardian may nevertheless expend a reasonable sum for her support and education; and if the charges for those items are necessary and reasonable, such as a court of chancery would sanction, he should be allowed a credit for them on settlement in the probate court.

3. *Set-off for ward's services to guardian, and burden of proof as to value thereof.*—If the ward renders valuable services to the guardian, while residing with him, she is entitled to set-off the value of those services, against his charge for board; but the *onus* of proof as to the value of such services is on the ward.

APPEAL from the Probate Court of Russell.

IN the matter of the final settlement of the accounts and vouchers of Elisha Calhoun, as guardian of Eliza Calhoun. The guardian's accounts were filed for settlement on the 16th August, 1866, and the settlement was made on the 8th October following. The ward's estate consisted of her distributive share of the estate of her deceased father, Ezekiel Calhoun, and amounted to three hundred and eleven 03-100 dollars; for which a decree was rendered by said probate court, in favor of said Elisha Calhoun, as her guardian, against said Calhoun and Ralph O. Howard, as the administrators of the estate of said Ezekiel Calhoun, on final settlement of their accounts, on the 12th July, 1852. In the guardian's account, as stated by himself, and allowed by the court, he charged himself with debits amounting to $508.59, and claimed credits amounting to $1,004.87. The debits were—1st, a balance of $293, "due as per last return, October, 1860"; and, 2d, the sum of $65, "for services of ward in 1864"; and interest was charged on each of these items up to the day of the settlement. The first item specified on the credit side of the account was $61.58, "for board paid Mrs. Renfroe, as per voucher No. 1"; which voucher was a receipt, signed by Mrs. R. Renfroe, in these words: "Received of Elisha Calhoun, for board of Eliza Calhoun, one hundred pounds of bacon and lard, twenty bushels of corn, and twenty dollars in Confederate money; said articles furnished to me by said Elisha Calhoun, in the year 1863, in payment of her board at my house in that year, from 1st March, 1863, to 1st January, 1864, and interest." The second voucher was an account against the ward, in favor of the guardian, for various articles, such as shoes, calico, muslin, &c., furnished to her during the years 1860, 1861, 1862, and 1863, amounting to $57.40; and board and washing, at fifteen dollars per month, from 1860 to

1864, amounting to $670; and interest on these sums, $167, was also claimed and allowed; making the whole amount of the credit, under voucher No. 2, $894.40. The other credits claimed and allowed were—an attorney's fee, for services rendered on the final settlement, $10; "commissions on $215.59 received, $5.40"; "commissions on $965.98 disbursed, $24.12"; and costs paid on settlement, $9.37. "The ward contested and objected to each and every voucher, and demanded strict proof; and moved to charge the guardian with five hundred dollars, or other large sum, in addition to what he had charged himself with; also, to charge him with compound interest; also, to charge him with a large amount of profits, to-wit, five hundred dollars, alleged to have been made by him by lending out his ward's funds at more than legal interest."

"On the hearing," as the bill of exceptions states, "the guardian proved, by Mrs. Renfroe, who was his sister, that she received the articles mentioned in voucher No. 1; that the ward boarded at her house, from the 9th March, 1863, until the 1st January, 1864, under a contract with the guardian, who had agreed to pay her until she was satisfied; that the bacon she received was worth, in Confederate money, from seventy-five cents to one dollar per pound, and the corn from three to four dollars per bushel. The guardian then offered to prove, by his own oath, all the items in voucher No. 2 which were under twenty dollars; to which the ward objected, and, her objection being overruled, she excepted. The guardian, then being sworn, stated, that he knew, of his own knowledge, that each item in said voucher was correct. On cross-examination he stated, that he did not recollect paying the money and purchasing any one article in said voucher—that he sent the money to buy the articles, sometimes by one person, and sometimes by another, and set down what they reported they paid for the things; that he could not recollect any of these items, but was satisfied they were correct, because said voucher was a copy of his memorandum, made about the time the things were bought; that he did not know why he had not charged the items bought in 1860 in his return of 1861; that if any item, not charged in annual settlement in Feb-

ruary, 1861, was charged in present account, he did not remember the reason therefor; that it might have been because the account had not been presented, or not paid; that he did not know whether he intended to give it to his ward, or not; that he would have filed a different account, if she had behaved well; that he did not recollect having ever told any one that he would give her anything; that what he would do for her depended on her conduct; that her conduct did not suit him, and he sent her to another house to board. The ward then asked the court to exclude all the guardian's testimony about said items; which motion being overruled by the court, the ward excepted. Richard Pitts, a witness for the guardian, testified, that board was worth twelve dollars and a half per month, excluding any service of the ward, and fifteen if washing was included; and that the ward was now about twenty-three years old. One Stratford, a witness for the guardian, testified, that on a Sunday morning, two or three months ago, he went with said guardian, as a witness, to the house where the ward was staying, and remained there an hour or two; that the guardian then asked her for her account for services rendered while at his house; that the ward then told him what services she had rendered; that the guardian took them down, and admitted their correctness. On cross-examination he said, that he did not know the amount of the ward's account; that she had no notice they were coming to get her admissions, and no time to make out her account, except the hour they remained.

"The guardian having here rested his case, the ward introduced the following decrees"—namely, the decree against the administrators of her father's estate, for her distributive share, which is mentioned above; and the several partial accounts filed by the guardian, the dates of which were as follows: January 3, 1855; March 27, 1856; October 1, 1857; October 1, 1858; and October 1, 1860. Each of these accounts was sworn to by the guardian, but no decree seems to have been rendered on them. In each of them, the guardian charged himself with the balance found against him by the last preceding account, with interest, and credited himself with some small sums paid out;

the balance against him, as shown by the last account, being $293. "The ward then examined the guardian as a witness, who stated, that he had never collected the decree against himself and R. O. Howard, above set out; that he could have done so at any time; that he had money on hand every fall; that he settled with said Howard, his co-administrator, by receiving notes due to the estate of said Ezekiel Calhoun, one on said Howard, and another on Renfroe, making them payable to himself individually; that he considered these notes as his own, and held himself responsible to his ward in money, and had so charged himself, under oath, in said annual settlements; that he only made simple interest on these notes, and did not consider that his duty to his ward required him to collect them. The ward asked, what he did with the money he owed her; to which he replied, that he had that safe—that he had the notes of said Howard and Renfroe, which he considered his own, and had charged himself with what he owed his ward, but had never separated what he had charged himself with from his own money; that he never loaned out any money in the name of his ward, or for his ward; that he did what he pleased with his own money, and loaned it out at whatever rate of interest he could get for it. The ward then asked him, what rate of interest he got for his own money, thus mixed with his ward's funds; and whether or not he had made more than eight per cent. on his own money during the time of his guardianship. To each of these questions the guardian objected, and the court sustained his objections; to which the said ward excepted. The ward then moved the court to reject each and every item of said voucher No. 2, separately—1st, because the articles show on their face that they were not proper to be purchased by the guardian, on account of the amount of property owned by the ward; 2d, because they were not proved; and, 3d, to the items for board, because the guardian had shown that the ward had rendered services, and had not shown what the board was worth after giving credit for the services. The guardian inserted in the account, and charged himself, at the instance of the court, with the sum of sixty-five dollars, for the ward's services; and the court having refused

to reject any of the items, the ward thereupon excepted.

"The above being all the evidence," the court rendered a decree, allowing the guardian's account as stated; which decree, with the several rulings of the court to which exceptions were reserved by the ward, is now assigned as error.

G. D. & G. W. HOOPER, for appellant.

JUDGE, J.—One question made in this case is, that the guardian should have been charged on the settlement with compound interest. The law, as settled in this State, is, that a guardian is not liable to be charged with compound interest, unless he is guilty of such gross neglect in the execution of his trust, 'as is evidence of fraud.—*Bryant v. Craig*, 12 Ala. 354. No such mismanagement, as is evidence of a corrupt intention on the part of the guardian, appears in this case. The failure to make annual settlements is not evidence of fraud, but establishes negligence merely; and the court, therefore, acted correctly in refusing to allow compound interest.—*Bryant v. Craig, supra.*

2. The estate of the ward was small—it amounted to but little over three hundred dollars, in money. The annual interest on this sum was not sufficient for her support and maintenance. If reasonable charges for boarding, clothing, and expenses incurred in educating a ward, should exceed the interest, or annual profits arising from the estate; still, if, under the circumstances, such charges were necessary, and such as a court of chancery would have decreed, they should be allowed.—*Stewart v. Lewis*, 16 Ala. 734; *Montgomery v. Givhan*, 24 Ala. 568. In this case, we can not say that the rule, as above laid down, was materially violated by the probate court, in the allowance of the items charged against the ward; and their correctness appears to have been substantially established by the evidence.

3. The ward was entitled to set off the value of the services rendered by her for the guardian, while residing with him, against the demand for board. If the amount of the credit allowed by the guardian, for these services, was insufficient, the burden of showing the insufficiency rested upon

the ward. In the absence of definite evidence as to the character and value of the ward's services, it is impossible for us to say that the court erred in regard to the allowance for them.

We can see no reversible error in any of the rulings of the court on the settlement.

Decree affirmed.