# Waldrom *v.* Waldrom.

*Bill in Equity for relief against Probate Decree rendered on Settlement of Guardian's Account.*

1. *Conclusiveness of probate decree, and equitable relief against.*—A decree of the Probate Court, rendered on settlement of a guardian's account, has the same dignity, force and conclusiveness as a judgment at law; and while a court of equity has jurisdiction to open it on a proper application, the same special grounds for equitable interference must be shown as in case of a judgment at law—that is, the party complaining must show that wrong or injustice has been done to him, and that it was caused by accident, surprise, fraud, or the act of his adversary, and without fault or neglect on his own part.

2. *Policy of life-insurance; interest of beneficiaries on surrender; guardianship of children by father.*—When a policy of insurance is taken out by a husband and father on his own life, for the benefit of his wife and children, a present interest vests in the beneficiaries on the delivery of the policy, and if he afterwards surrenders the policy on payment of its cash value, receiving the share of his infant children as their guardian, under a regular appointment, he is liable to them for the amount so received, without regard to the parental relation, as any other guardian would be.

3. *Allowance to father out of child's estate.*—When an infant has an estate, and his father is unable to maintain and educate him in a manner authorized by it, a court of equity will make an allowance to the father out of the infant's estate, to supplement the father's inability, benefit to the infant being the controlling consideration in each case.

4. *Allowance to guardian out of ward's estate.*—When a father, being also the guardian of his infant child, has expended moneys belonging to the child's estate in his support and education, under circumstances which would have justified a court of equity in decreeing it, he will be allowed a credit for such expenditures on settlement of his accounts as guardian, subject to a set-off for the value of any services rendered to him by the child; but, when he seeks to establish an allowance for such expenditures, as an equitable set-off against a probate decree rendered against him on settlement of his accounts as guardian, his claim to relief must appear by clear and definite averments, showing that the expenditures were made under such circumstances as would have entitled him to a credit on that settlement.

5. *Service of citation less than ten days before settlement.*—The fact that the citation from the Probate Court was served on the guardian less than

[Waldrom v. Waldrom.]

ten days before the decree on settlement was rendered against him, while the decree recites due service (Code, §§ 2793, 2526), neither renders the decree void, nor, of itself, authorizes equitable relief against it.

6. *Equitable relief against probate decree ; averments not negativing negligence.*—General averments of "sickness, bad roads, bad weather, personal attention to other business, and a message sent to the probate judge, through the deputy-sheriff, that he could not be present on the day appointed for the settlement," are not sufficient to negative fault or negligence on the part of the guardian, when it does not appear that he made any effort to employ counsel, to procure a continuance, to bring his condition or defenses to the attention of the court, or to obtain a rehearing.

Appeal from the Chancery Court of Marengo.

Heard before the Hon. Thomas Cobbs.

The bill in this case was filed on the 8th July, 1884, by Henry M. Waldrom, against his children, Marvin Waldrom, Frederick Waldrom, Bettie Wilkinson and her husband; and sought to enjoin a decree which had been rendered against the complainant, as guardian of his said children, by the Probate Court of said county, on the 14th January, 1884, or to establish an equitable set-off against it, on account of moneys alleged to have been expended by complainant in the support and education of his said children. The said probate decree, a copy of which was made an exhibit to the bill, recited that said 14th January was appointed, by an order made and entered on the 10th December, 1883, "to examine the account then stated by the court against Henry M. Waldrom, as guardian of the estate of Marvin Waldrom *et al.*, minors, and to audit and restate the same, if it should be found necessary," and the appearance of said Marvin *et al.* by their attorney, and then proceeded thus : "And it appearing to the satisfaction of the court, by due proof, that a citation has been regularly issued and served upon said H. M. Waldrom, at least ten days before this day, in all respects according to law, and as directed by said former order of the court ; and said H. M. Waldrom having wholly disregarded the said citation and order of court, and having failed to appear ; and no objection or exception to said account, as heretofore stated by the court, having been filed, and none being made to the court ; and it being shown to the court that each of said wards has attained the age of twenty-one years ; it is ordered, adjudged, and decreed by the court, that said account, so stated against said H. M. Waldrom as aforesaid, be, and the same is hereby, passed and allowed ; and that said Marvin Waldrom, Frederick Waldrom and Bettie Waldrom, each, have and recover of said H. M. Waldrom, as guardian aforesaid, the sum of $265.84, being the amount now adjudged by the court to be due from said H. M. Waldrom, guardian as aforesaid, to said Marvin, Fred. and Bettie respectively, besides the costs," &c.

[Waldrom v. Waldrom.]

The bill alleged, as grounds of relief against this decree, that the only estate belonging to said children which ever came into the complainant's hands as their guardian, was their interest in the money ($1095.50) which he had received on the surrender of a policy of insurance for $5,000 on his own life, for the benefit of his wife and children ; that he effected this settlement with the insurance company, as the cash value of the policy, in January, 1878, and had himself appointed guardian of his children, at the instance of the attorney of the company, representing their interest to be $900, and gave a receipt for the money as their guardian ; that he supposed this was mere matter of form, and would not have assumed such guardianship, if he had known that he thereby incurred any liability towards his children ; that he had derived no profit from the money, but had expended the entire amount, and more, in the support and education of his said children ; and he insisted that, if he was liable at all to them, he should be credited with the amount of such expenditures, as an equitable set-off.

In excuse of his failure to appear and make defense in the Probate Court, the bill contained these allegations : "Your orator shows that, during the year 1883, he received a citation to settle his guardianship in said Probate Court ; but, being in such bad health, confined to his bed, and knowing also that said judge who issued the citation knew of the nature, character, and circumstances of the guardianship, he sent a note to said judge, stating his ill-health, and also that he did not consider the matter binding on him ; and he heard nothing more of any proceedings therein, until about the 10th of January, 1884, when, your orator being sick in bed, his wife received, at the hands of Mr. Tom Sharpe, an envelope, which she opened, and told your orator that he had to go to Linden on Monday about the guardianship. Your orator then ascertained that it was a citation ; but he did not read it, because he was sick, and for the following other reasons :" namely, that a writ of possession was then in the hands of the deputy-sheriff, under which complainant was to be dispossed of his home and plantation on the following Monday ; "and the deputy-sheriff was executing this judgment against your orator about the 12th and 14th January, 1884, while he was suffering with pneumonia, and during an unprecedented cold spell of weather, and while he had been unable to make any provision for himself or his family, and which so pre-occupied his atttention as to prevent him from giving the case in the Probate Court the personal attention it seems to have required. Besides, your orator was eighteen miles from the court-house, the weather was freezing, and the roads in such condition that he felt it would be unsafe for him, in his

[Waldrom v. Waldrom.]

critical state of health, to travel over them ; and he had neither ability or funds to employ an attorney to appear for him." It was alleged, also, that the complainant sent a verbal message to the probate judge, by the deputy-sheriff, "notifying said judge that your orator could not be present on Monday," and that said deputy-sheriff failed to deliver the message ; also, that a peace-warrant was sworn out against him, under which he was arrested, "and hauled to Linden in a wagon, to-wit, on the 17th January, 1884, and there imprisoned in jail ; and he knew not that a final decree had been rendered against him in the Probate Court until it was too late to take any steps in said court to remedy the matter." It was alleged, also, as errors and irregularities in the probate decree, that the original citation to the complainant did not state whether the settlement was to be partial or final; that it purported to require a settlement of his guardianship of his five children, while the decree rendered related only to the estate of two of them ; that the second citation was in fact served on him less than ten days before the decree was rendered ; and that Bettie Waldrom, named in the decree and citation, was then a married woman, and her husband was not made a party.

The chancellor sustained a demurrer to the bill, on the ground that its allegations did not relieve the complainant of the imputation of negligence; and his decree is now assigned as error.

W. W. Dugger, for appellant.—(1.) If the children took any vested interest in the policy, which is denied, their guardian could not compromise or destroy it by a surrender of the policy; and they yet have their action at law against the insurance company. (2.) The recitals of the decree import verity, and would be conclusive on appeal or *supersedeas.—Marshall v. Candler*, 21 Ala. 490. (3.) The Chancery Court has express statutory authority to correct errors of law or of fact, which have occurred in the settlement of guardians' accounts (Code, §§ 3837–39); and the errors and irregularities specified in the bill make a proper case for its intervention. (4.) The allegations of accident, ignorance, and equitable set-off, are sufficient to sustain the equity of the bill.—Story's Equity, vol. 1, §§ 121–30, 542 ; vol. 2, § 1144.

W. H. Tayloe, *contra*, cited *Drake v. Stone*, 58 Ala. 133 ; Bliss on Life Insurance, 525 ; Freeman on Judgments, §§ 97, 487 ; *Collier v. Falk*, 66 Ala. 223 ; *Beadle v. Graham*, 66 Ala. 102 ; *Waring v. Lewis*, 53 Ala. 615 ; *Bowden v. Perdue*, 59 Ala. 409.

[Waldrom v. Waldrom.]

CLOPTON, J.—A decree of the Probate Court, on the final settlement of a guardian, possesses the same dignity, and has the same force and conclusiveness, as the judgment of any court of record. While a court of equity has original jurisdiction to open such settlement, when it is appealed to, and its jurisdiction invoked for such purpose, the same special grounds of equitable interference must be shown, as in case of a judgment at law.— *Waring v. Lewis,* 53 Ala. 615. A proper and due regard for the peace and interests of society requires strictness and caution in exercising the power to disturb the decrees and judgments of other courts of competent or concurrent jurisdiction, and re-opening controversies, which it is the policy of the law to quiet. The court will not interfere on account of irregularities in the proceedings, or merely to review and correct errors, or when there is a plain and adequate remedy at law. To successfully invoke the interposition, it is not sufficient that wrong has been done, but it must be manifest that the wrong occurred because of accident, surprise, fraud, or the act of the opposite party, and without fault or neglect on the part of the party complaining. A concurrence of injustice committed, and freedom from fault and negligence, is an indispensable condition to the exercise of this jurisdiction.— *Humphreys v. Burleson,* 72 Ala. 1; *Beadle v. Graham,* 66 Ala. 102; *Bowden v. Perdue,* 59 Ala. 409.

2. The policy of insurance mentioned in the bill, having been made payable to the wife and children of the complainant, and having been issued for their benefit, vested an interest in them. In *Drake v. Stone,* 58 Ala. 133, it is said: "We hold that, under an ordinary life-policy, an interest vests in the person for whose benefit it is taken out, when the policy is delivered, subject to be devested on forfeiture upon non-payment of the premium, as the policy may prescribe; and on the death of the beneficiary, either before or after the death of the assured, the fund arising therefrom goes by bequest or succession, as other personal assets of the beneficiary."— *Williams v. Williams,* 68 Ala. 405. Whether the complainant, being the assured, surrendered the policy, and received its cash value, according to its terms, which are not set out, or whether he did so without authority, then, on his action being ratified by the beneficiaries having capacity, their shares of the sum received vested in them, and their right relates to the time of its reception. To obtain the money from the insurance company, the complainant procured the appointment of guardian, and received it in that capacity. The complainant was under the same legal duty to preserve and manage the portions of the fund belonging to the estate of his minor children, as guardians, not sustain-

19

ing the parental relation, are in respect to the property of their wards.

3. The injustice, of which the complainant complains, is, that he expended during their minority, in maintaining and educating the children, who have recovered decrees against him, more than the sum of their shares of the fund; and he insists, that he should be allowed a set-off against his liability as guardian. The duties, arising from the relation of parent and child, are reciprocal. The father owes his minor child care, protection, nurture and education—nurture and education, suitable to his estate and condition in life—and is entitled to the services and obedience of the child. When the child has an estate, and the father is unable to maintain and educate him in a manner authorized by such estate, a court of equity will, under such circumstances, make an allowance out of the infant's estate, to supplement the father's inability. "Benefit to the infant is the controlling consideration; but the circumstances of the father may be inquired of, to determine whether or not he is able to properly maintain such child."—*Barnes v. Barnes*, 64 Ala. 375.

4. When a father, being also guardian, has expended money of the estate of his child, in his support and education, the father's means being inadequate, and the expenditures being necessary, and suitable to the estate of the infant, and such as a court of equity would have decreed, he will be allowed a credit for such expenditures, on a settlement of his accounts as guardian, subject to a set-off to the value of any services which the child has rendered the father.—*Calhoun v. Calhoun*, 41 Ala. 369. If a decree has been rendered by the Probate Court, and the guardian appeals to a court of equity to open such decree, his title to relief must be made manifest by clear and definite averments, showing that the expenditures were made under such circumstances, as would have entitled him to a credit on the settlement in the Probate Court. The averments of the bill are vague, uncertain, and insufficient. Had all the facts averred in the bill been proved, the Probate Court would not have been authorized to credit the complainant with the disbursements.

5. The decree recites, that a citation was regularly issued, and served on complainant ten days before the day of the settlement, in all respects according to law, and as directed by a former order of the court. It may be conceded, that the recital is not conclusive, and can be controverted in any direct proceeding attacking the decree. And it may be further conceded, that the citation was received by complainant less than ten days before the rendition of the decree. This does not make the decree void, and is insufficient to authorize the interference of a court of equity. In *Dunklin v. Wilson*, 64 Ala.

[Werborn v. Pinney.]

162, we said: "Want of notice or knowledge is not enough. He must go further, and show, both in averment and proof, that he had and has a defense good in law, and in what that defense consists. The court must be put in possession of the facts; for the sufficiency of the defense is an indispensable element of the issue."

The excuse assigned by complainant, for his failure to present his defenses in the Probate Court, is sickness, bad roads, bad weather, personal attention to other business, and a message sent by the deputy-sheriff to the judge of probate, that he could not be present. No effort was made to employ counsel, or to procure a continuance. No adequate means were used to bring his defenses or his condition to the attention of the court. So far as appeared to the court, he was indifferent to the settlement. And when he was carried to Linden, three days after the settlement, no inquiries concerning the matter were made, and no application for a new trial. It is the complainant's misfortune, if, owing to his supineness and inattention, he did not hear of the rendition of the decrees in time to have any injustice rectified. He did not exercise the due diligence exacted of those who address a court of equity, for relief against a judgment at law. The complainant is not without fault or negligence.—*French v. Garner*, 7 Por. 549; *Pharr v. Reynolds*, 3 Ala. 521; *Stinnett v. Br. Bank*, 9 Ala. 120.

Affirmed.