# Bellamy v. Thornton.

*Bill in Equity by Guardian to be Reimbursed from Real Estate of Ward.*

1. *Bill by guardian to be reimbursed from sale of ward's lands; when maintainable.*—Where a guardian has used his own funds for the support of his wards, and this expenditure was necessary for the proper maintenance and education of the wards, and for their best interests, and the income of their estate and the *corpus* of their personal property were insufficient therefor, and the father of the wards was unable or refused to provide therefor, and was unable to reimburse the guardian, the latter is entitled to be reimbursed from a sale of the real estate of the wards; and after his office as guardian has terminated, and the land of the wards has passed into the hands of a trustee for management, a bill filed by such guardian for a sale of said land for reimbursement, contains equity, and should not be dismissed.

[Bellamy v. Thornton.]

2. *Same; practice in such case.*—A reference to ascertain the most practicable and advantageous method of reimbursement, whether by renting out the lands and applying the rents thereto, or by a sale of all or a portion, and what portion, of the land, and on what terms, is a proper practice in such case.

APPEAL from the Chancery Court of Russell.
Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellant, W. A. Bellamy, as guardian and administrator, to remove the administration and guardianship of the estate of Mrs. Reese, deceased, into the chancery court, and have an accounting, and a sale of so much of the property of said estate as may be necessary to pay to the complainant any balance which may be found to be due him on final settlement. The facts of the case are sufficiently stated in the opinion. The appeal is taken from the decree of the chancellor sustaining a demurrer to the bill of complaint and dismissing the said bill, which decree is here assigned as error.

L. W. MARTIN and W. J. BOYKIN, for appellant.—A trustee has a lien for expenses and proper disbursements out of the estate of his *cestui que trust*. In this case the appointment of Thornton by the register was the assumption of jurisdiction by the chancery court, and makes its jurisdiction exclusive.—3 Wait's Act. & Def., pp. 139, 149 ; 9 Amer. & Eng. Encyc. of Law, 102 ; *Calhoun v. Calhoun*, 41 Ala. 369 ; *Stewart v. Lewis*, 16 Ala. 734 ; *Montgomery v. Givhan*, 24 Ala. 568; Code of Alabama, § 3579.

Whenever there is a trust the jurisdiction of equity attaches, and is for the most part exclusive. All suits against trustees must be brought in equity, unless the trustee has rendered himself personally liable. Whenever the rights of property of an infant are involved, equity will take jurisdiction.—3 Wait's Actions & Defenses, pp. 139, 142.

The probate court could not make Thornton a party to a final settlement.—Code of 1886, § 2176.

No counsel marked as appearing for appellee.

HEAD, J.—In 1884 Mrs. Ella F. Reese died, testate,

leaving a real and personal estate, all of which she devised and bequeathed, in equal shares, to her three minor children. By the will she appointed M. L. Patterson as trustee, to manage the estate during the minority of the children, with a provision that if he should fail to accept, the chancery court, having jurisdiction, should appoint some suitable person to act as such trustee. Patterson, if he should accept, or if not, the appointee of the chancery court, was empowered and directed to have full and exclusive control of the estate, until the youngest child should arrive at full age, with power to set apart to each child as he or she should become of age, or to the daughter, on her marriage, his or her share of the estate. Meanwhile, out of the rents, issues and profits of the estate, he was empowered to provide the children with such support, maintenance and education as their condition and prospects in life would reasonably allow. Patterson was also nominated to act as executor. He, however, renounced both nominations, and declined to serve, either as trustee or executor. The chancery court having made no appointment of a trustee, certain creditors of the testatrix applied to the probate court of Russell county to commit the estate to an administrator of its appointment, and the complainant, Bellamy, being then sheriff of the county, was, by said probate court, appointed to administer the estate, by virtue of his office as sheriff; and he entered upon the duties of the trust. He shows by the bill that he found the estate considerably in debt, and the children without the means of maintenance and education; that, under proper orders of court, he converted the personal property into money and paid the debts. On the 20th of December, 1884, he reported to the probate court the necessities of the children, in respect of their maintenance and education, and that there was no person by or through whom the necessary relief could be afforded them, and prayed for the appointment of a guardian to provide for them; and thereupon, the court, reciting in its order the said necessities of the children, appointed complainant, Bellamy, by virtue of his office, as sheriff, to act as such guardian, and he entered upon the duties of that office. Thereafter, with the proceeds of the personal property, not used in paying debts, and his private funds, he provided for the maintenance and education of his wards, furnishing them only

what they imperatively needed; and expended, in this way, over $550 more than the entire personal assets which came into his hands, as administrator; which sum is now due to him personally. The testatrix left 400 acres of land, which is described and set forth in the bill. Complainant's term of office as sheriff expired in 1888, and with it his office as administrator and guardian terminated, and it then became his duty to make final settlement of both those trusts. On September 2, 1889, the register in chancery appointed C. J. Thornton, trustee, to carry out the provisions of said will, who accepted the appointment, and has since had the management of the estate and the control of said minors. In April, 1889, complainant filed his accounts and vouchers in said probate court, for final settlement of his administration and guardianship, but, thereafter, in an effort to make the settlements, the court declined to take jurisdiction, because of the peculiar provisions of the will, and particularly because, as the court thought, it had no jurisdiction to make the then acting trustee a party to the settlement. This bill was filed July 19, 1892, by Bellamy to remove the administration and guardianship settlements into the chancery court, with special prayer for an accounting and a decree for the sale of such property as may be necessary to be sold to pay him any balance which may be found due him on final settlement, concluding with the prayer for general relief. The devisees and the trustee, Thornton, are the parties defendant. The bill was afterwards amended to meet certain grounds of demurrer interposed by the trustee; and to it, as amended, the trustee again demurred. The chancellor, in vacation, sustained the demurrer and dismissed the bill, holding that it was not capable of amendment, so as to give it equity. This was the equivalent of a dismissal, on motion, for want of equity, and the correctness of the ruling must be determined upon consideration of the question whether, taking all amendable defects, if any, as cured by intendment, there is equity in the bill.

It is insisted that, under the peculiar circumstances, the dual relation of complainant, as administrator and guardian, creates an obstacle to the proper exercise of the jurisdiction of the probate court to do complete justice in the settlement of these trusts, for the reason that the offices of administrator and guardian had terminated,

and complainant would not be entitled to receive as guardian any distributive interests, which might be decreed against him to his wards, on the administration settlement, and would not be chargeable as guardian therewith, whereby he might receive credit against the same for expenditures made for the wards. In the view we take of the case the bill may be supported on another ground, and we need not pass upon this alleged cause of equitable interference.

Disposed of, as the bill was by the chancellor, it must be taken as sufficiently showing that the father of the wards was unable or refused to support them and unable to reimburse complainant; that the income of their estate and *corpus* of the personal property were insufficient; and that it was necessary to their maintenance and education, and for their best interests, that the real estate, or some portion thereof, be sold for that purpose; in other words, such a state of facts, as that an order of sale would have been granted for the purposes mentioned, if applied for in advance of the expenditures.

It is a general rule that a guardian, or other fiduciary, having the control of infants' estates will not be permitted to use the *corpus* or principal of the estate in the support of the wards. He is, as a general rule, confined to the income. On application to the proper court, however, showing urgent need therefor, considering the best interests of the wards, the court will direct the application of such portion of the principal to that use as it deems proper; and, if necessary, will order real estate to be sold for the purpose. Our statutes, long ago, provided for such an appropriation of both personal and real estate. Section 2780 of the of Code 1876 reads as follows: "When upon the representation in writing of the guardian of a minor, it is made to appear to the satisfaction of the probate judge that the rents and profits of the estate of the ward are insufficient for his maintenance and education, the judge of probate may direct a sale of such portion of the estate, real and personal, of the ward as may be necessary for that purpose." In some jurisdictions, the rule is adhered to, that the guardian, to justify expenditures of the principal, and claim reimbursement, must obtain the proper order in advance; denying him indemnity, although the conditions were such as that the necessary order would have been grant-

ed, if applied for in advance.   But this court long since
adopted the less rigid rule of ratifying, in such cases,
that which would clearly have been previously authoriz-
ed, at least to the extent of allowing credit to the guard-
ian, upon the settlement of his accounts, for sums paid
out for maintenance and education, from the principal
of the estate, or beyond the income realized by him.—
*Stewart v. Lewis*, 16 Ala. 734; *Montgomery v. Givhan*, 24
Ala. 568; *Calhoun v. Calhoun*, 41 Ala. 369; *Waldrom v.
Waldrom*, 76 Ala. 285.   We are not aware, however,
that the question now presented, whether a lien will, in
any case, be decreed in favor of the guardian, upon the *cor-
pus* of the ward's estate, for moneys expended out of his
own funds, while guardian, in the necessary mainten-
ance and education of the ward, has ever arisen in this
State; nor have we found authority elsewhere in sup-
port of such relief.   In *Foscue v. Lyon*, 55 Ala. 440, a
testator, by bequest, created in Lyon, as trustee, an in-
terest bearing fund of $50,000, the interest on which
should be paid to his daughter, Mrs. Foscue, during her
life, and the principal of which remaining undiminished
at her death, should be settled on and vest in her child-
ren.   The trustee was required to invest the fund in safe
or productive stocks, or place at interest on good security
as, in his discretion, would seem best; collect the divi-
dends or interests annually and pay the same to Mrs.
Foscue.   During the long administration of the trust, it ap-
pears that the trustee paid to her more than the annual
income of the fund, and on bill filed by Mrs. Foscue and
her children for a settlement, after the resignation of the
trustee, the trust estate went into the hands of a receiver
appointed by the court.   Upon claim made by the trus-
tee for indemnity for the excess paid the life tenant over
the annual income, this court, speaking by Chief Justice
Brickell, said:   "We think, if the trustee, in making
payments to Mrs. Foscue, exceeded the interest, she is
bound to protect him against loss, independent of an
express promise to indemnify him.   It is a general rule,
that the *cestui que trust* ought to save harmless the trus-
tee, who has honestly, without gain to himself, advanced
or paid money for his benefit.—Perry on Trusts, § 458.
Her right was to the annual interest realized, or which,
by due diligence, the trustee could have realized, from
the investment of the trust fund.   If she has received

[Bellamy v. Thornton.]

more, the duty of refunding, either to the remainder-men or the trustee, if he is charged because the princi-pal has been invaded, is imposed by law.—Tiff. & Bull. on Trusts, 621 ; *Mills v. Mills*, 7 Sim. 501 (10 Cond. Eng. Chan. 168) ; *Williamson v. Williamson*, 6 Paige 298. If the trustee had not resigned, he could have retained from the annual income and interest payable to Mrs. Foscue, un-til indemnified against loss, and the principal restored to the amount it would have been if it had not been di-minished by the payments to her. Having resigned, and a suit pending in which she is a party complainant, for an account of the administration of the trust, the estate being in the custody of a receiver appointed by the court, it was competent to direct the receiver to apply the in-come and interest to the indemnity of the trustee. There-by the principal will be restored for the benefit of the remaindermen.'' It will be observed that no question did or could arise, in that case, respecting the applica-tion of the *corpus* of the fund to Mr. Lyon's indemnity, since the *corpus* did not belong to Mrs. Foscue, but to her children. If she had been the owner of the entire interest, it is not to be perceived why that should not have been subjected to the trustee's reimbursement. In the present case the children own the lands in fee ; the office of the guardian, the complainant, has expired, a successor, as trustee under the will, appointed, and the lands passed into his hands for management. We think, if it should be clearly made to appear that the expendi-ture, for which reimbursement is claimed, was made, and that it was demanded by the necessities of mainten-ance and education of the children, and for their best in-terests, and that the father was unable, or refused to pro-vide such necessary maintenance and education, and un-able to reimburse complainant, he, the complainant, should be reimbursed from the real estate of the child-ren, and that it should be referred to the register, upon proof of these facts, to ascertain the most practicable and advantageous method of accomplishing it, whether by renting out the lands and applying the rents in that way ; or by sale of all, or a portion, and what portion, of the lands, and on what terms. We think, therefore, there is equity in the bill. The bill may, in some mat-ters of detail, need amendment. If so, what we have said will indicate what is necessary.

Reversed and remanded,